**UNITED STATES of America, Plaintiff,**

v.

**Thomas KAPATOS, Defendant.**

**No. 66 Cr. 34.**

United States District Court
S. D. New York.

June 27, 1966.

Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, for the United States; Jay Gold, Asst. U. S. Atty., of counsel.

Frank A. Lopez and Theodore Rosenberg, Brooklyn, N. Y., for defendant.

FRANKEL, District Judge.

I.

On January 14, 1966, defendant was indicted on two charges: (1) theft of jewelry comprising an interstate shipment (18 U.S.C. § 659), and (2) conspiracy to accomplish that theft (18 U.S.C. § 371). On January 17, 1966, pursuant to a warrant issued upon the indictment, he was arrested at a service station, his car was searched, and F.B.I. agents seized, *inter alia*, some gold buttons and police insignia found in the

trunk of the car.[1] Conceding that the arrest was lawful, but urging that the search of the car was not, defendant has moved under Rule 41(e), Fed.R.Crim.P., for return and suppression of the seized property. At an evidentiary hearing on the motion, four of the six F.B.I. officers who made the arrest and a part owner of the service station where it occurred developed the substantially undisputed facts. Upon the record thus made, the court reaches the following findings and conclusions:

Informed of the warrant for defendant's arrest, and knowing both the 1965 automobile he drove and his practice of patronizing a service station at 9th Avenue and West 15th Street in New York City, six F.B.I. agents waited for him at or near the service station on the morning of January 17, 1966. He drove into the service station shortly after noon. Within seconds, the agents converged upon him and placed him under arrest as he was starting to alight from the car.

On orders from the agents, defendant stood facing the automobile, with his hands placed apart on its roof and an agent on either side of him, while a third agent searched his person. Within a minute or so he was handcuffed with his hands behind him. No weapons or implements useful for escape were found on him.

While defendant was being searched, one of the agents entered the car to search it and block any possible attempt by defendant to reenter it. The keys were in the ignition. They were handed out to the agent (Gitschier) who had handcuffed defendant, and Gitschier proceeded immediately after the handcuffing to open and search the trunk. There, within some three to five minutes after the arrest, Gitschier found the buttons and insignia that comprise the important subject of this motion.

When the search of the trunk started, defendant was still standing under guard at the side of the car. He made no effort to escape, and said he wanted to avoid a scene. While the search of the trunk proceeded, defendant was placed in an F.B.I. car a few feet away in the custody of three agents. The record is unclear, and it is not important, whether the buttons and insignia were found a minute or so before or after defendant was installed in the government vehicle. The three agents drove off with defendant some ten minutes later.

The remaining agents completed the search of defendant's automobile. About five minutes after the arrest, to allow access to the gasoline pumps, the automobile was moved some twenty feet, with its trunk open, and the search of the trunk was then continued. Some items— though none of potential consequence for defendant's impending trial—were seized in this second stage of the search. About 15 minutes after the arrest, the car was moved again and placed on a lift, where its underside was searched by the agents. Nothing was found or taken at this final point.

## II.

Invoking primarily Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), defendant claims that the search of his car without a warrant was unlawful and cannot be justified as incidental to his concededly lawful arrest. *Preston* is sharply distinguishable. On the premises stated in that opinion, together with the authorities preceding and following it, the search in question here was reasonable and lawful.

The bare statement of *Preston's* facts discloses vital dissimilarities between that case and this one. There, the police, on a telephoned complaint, arrested for vagrancy three allegedly "suspicious" men seated in a car. The men themselves were searched. However, to continue with the Supreme Court's statement of

1. The conspiracy count charges as an overt act that defendant, on November 8, 1963, the date of the substantive crime, was dressed as a policeman and, with a revolver in his hand, approached a vehicle.

the pertinent facts (376 U.S. at 365, 84 S.Ct. at 882):

"The car, which had not been searched at the time of the arrest, was driven by an officer to the station, from which it was towed to a garage. Soon after the men had been booked at the station, some of the police officers went to the garage to search the car and found two loaded revolvers in the glove compartment. They were unable to open the trunk and returned to the station, where a detective told one of the officers to go back and try to get into the trunk. The officer did so, was able to enter the trunk through the back seat of the car, and in the trunk found caps, women's stockings (one with mouth and eye holes), rope, pillow slips, an illegally manufactured license plate equipped to be snapped over another plate, and other items. After the search one of petitioner's companions confessed that he and two others—he did not name petitioner— intended to rob a bank in Berry, Kentucky, a town about 51 miles from Newport."

Approaching the appraisal of those circumstances, the Court reaffirmed "that questions involving searches of motorcars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses." Id. at 366, 84 S. Ct. at 883. Nevertheless, it continued, while differing facts preclude mechanical judgments, the test in every case remains "was the search unreasonable." Id. at 367, 84 S.Ct. 881. Reiterating settled doctrine, the Court noted as unquestionable the right of officers "to make a contemporaneous search", incident to a lawful arrest, extending to an accused's person, to "things under the accused's immediate control, * * * and, to an extent depending on the circumstances of the case, to the place where he is arrested * * *." Ibid. It recalled the justification of the rule in "the need to seize weapons and other things * * * as well as * * * the need to prevent the destruction of evidence of the crime —things which might easily happen

where the weapon or evidence is on the accused's person or under his immediate control." Ibid. That justification disappears, the Court pointed out, "where a search is remote in time or place from the arrest." Ibid. Assuming, as the Government argued, that "the police had the right to search the car when they first came on the scene", the Court found "that the search was too remote in time or place to have been made as incidental to the arrest * * *." Id. at 367–368, 84 S.Ct. at 884.

Here, in significant contrast, the agents proceeded "to search the car when they first came on the scene." At the hearing of the motion, the questioning went to some degree on stopwatch premises that would make it critical to know how long the search was in progress before the damaging fruits of it were found. Even on this basis, the facts give defendant no comfort; the evidence that concerns him was discovered within minutes of his arrest and the simultaneous commencement of the search. In the end, however, there is nothing in law or in the common sense that defines it, Preston v. United States, supra, at 366, 84 S.Ct. 881 to warrant such unrealistic and finicky measures of the physical facts. Cf. United States v. Gorman, 355 F.2d 151, 155 (2d Cir. 1965). The judgment whether a search is "contemporaneous" and therefore lawful, at least where its duration is a matter of minutes rather than hours, cannot turn on the amount of time it requires.

Defendant argues that the agents were entitled only to make an incidental search for weapons or means of escape, and that this authority ended when he was made secure and found to be unarmed. In any event, he says, since the alleged crime had been committed almost three years before the arrest, the agents had no right to be searching for evidence. The first, broader contention is refuted by Preston and the familiar precedents it cites, showing the propriety of searching "for the fruits of or implements used to commit the crime." 376 U.S. at 367, 84 S. Ct. at 883. The second contention, like

defendant's earlier point concerning the time the search took, calls upon arresting officers to "make a considered and correct on-the-spot determination" of a kind that it is neither necessary nor wise to require. United States v. Gorman, supra, 355 F.2d at 155. This is so, we think, apart from the dubiousness of defendant's premise, seemingly contradicted by the record, that it is unreasonable to search for the products or paraphernalia associated with a crime that is not recent.

In sum, we find that the search was reasonable and lawful. The result is consistent with *Preston* and with the subsequent decisions under its authority. United States v. Gorman, supra; Crawford v. Bannan, 336 F.2d 505 (6th Cir. 1964), cert. denied, 381 U.S. 955, 85 S.Ct. 1807, 14 L.Ed.2d 727 (1965); Adams v. United States, 118 U.S.App.D.C. 364, 336 F.2d 752 (1964), cert. denied, 379 U.S. 977, 85 S.Ct. 676, 13 L.Ed.2d 567 (1965); Arwine v. Bannan, 346 F.2d 458 (6th Cir.), cert. denied, 382 U.S. 882, 86 S.Ct. 175, 15 L.Ed.2d 123 (1965); Price v. United States, 121 U.S.App.D.C. 62, 348 F.2d 68, cert. denied, 382 U.S. 888, 86 S.Ct. 170, 15 L.Ed.2d 125 (1965); Jefferson v. United States, 121 U.S.App.D.C. 279, 349 F.2d 714 (1965).

As an apparent afterthought, defendant says that there was an undue delay in his arraignment, urging that he is entitled to relief under the rule of Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). His brief says he was held in the F.B.I. car for some minutes before the agents drove away with him, and that this delay was for the purpose of validating the search of his automobile. There is no evidence to support this assertion. The search was begun practically at the instant of the arrest, before defendant was taken to the official car. For reasons already stated, the propriety of the search was established at the point of its prompt commencement. The *Mallory* argument in this context is without substance.

The motion is denied.

So ordered.