UNITED STATES of America, Appellee,

v.

Robert John DOYLE, Defendant-Appellant.

No. 303, Docket 30713.

United States Court of Appeals Second Circuit.

Argued Jan. 17, 1967.

Decided Feb. 28, 1967.

---

Jerome C. Ditore, Asst. U. S. Atty., Brooklyn, N. Y. (Joseph P. Hoey, U. S. Atty. for Eastern Dist. of New York, Brooklyn, N. Y., on the brief), for appellee.

Patricia A. Garfinkel, New York City (Anthony F. Marra, New York City, on the brief), for defendant-appellant.

Before MEDINA, ANDERSON and FEINBERG, Circuit Judges.

MEDINA, Circuit Judge:

On April 22, 1965 a man with a pistol in his hand entered a branch of the People's National Bank at Lake Ronkonkoma, Long Island, insured by the Federal Deposit Insurance Corporation, held up the employees and made off with $4200 of the funds of the bank. The robbery took place at about 2:30 in the afternoon. An officer of the bank immediately telephoned to the police describing the robber and his black Falcon car with license plate number 7Z9288. Within about 10 minutes or less three police cars drove into the yard of the place occupied by Robert John Doyle and his family. They found the black Falcon bearing license plate number 7Z9288 parked in the driveway. Doyle was at once arrested and, finding the door alongside of the driver's seat wide open, one of the police officers searched the car and found on the floor in front of the driver's seat an unlocked attache case containing a fully loaded .45 caliber semi-automatic pistol, a paper bag containing $4200 in United States currency, a portion of a

woman's stocking, sun glasses, a box of .45 caliber bullets, a knife and a handkerchief. As Doyle's wife screamed, Doyle said to the police, "Let her alone. I did it." A few moments later he requested one of the officers to give a five-dollar bill to his wife, commenting, "This is not part of the loot." The extraordinarily prompt apprehension of Doyle was in part due to the fact that one of the police officers knew Doyle, the license number of his black Falcon and the place of Doyle's residence within a mile or two of the bank. After his conviction for armed robbery, in violation of 18 U.S.C. Section 2113(a) and (d), and the imposition of a sentence of imprisonment for 24 years, Doyle appeals.

We are asked to reverse the judgment because it is claimed: (1) that the search without a warrant was illegal in view of the fact that Doyle was already handcuffed and in the custody of the police; (2) that two of Doyle's signed confessions were erroneously received in evidence, as he was not properly advised of his right to remain silent, and after unnecessary and unreasonable delay in violation of Rule 5(a) of the Federal Rules of Criminal Procedure; and (3) that various errors were made in the instructions of the trial judge to the jury. We find no merit in any of these claims and we affirm the judgment of conviction.

### I

The trial was conducted with scrupulous regard for Doyle's constitutional rights and Henry G. Singer, as assigned counsel, was alert to protect these rights at all times and to defend Doyle against the charge of armed robbery with professional skill and tenacity. There was a series of lengthy hearings both before and during the trial, in the absence of the jury, at which every fact and circumstance bearing on the legality of the search and seizure and on the voluntary and uncoerced nature of the various admissions and confessions made by Doyle were laid bare. In this process Doyle himself participated. He testified at these various hearings and he also testified in his own defense at the trial, and in the presence of the jury.

The search of the black Falcon was substantially contemporaneous with the arrest. The car was in Doyle's immediate presence and but a few feet from him when he was handcuffed and taken into custody. Indeed, the car was itself an instrumentality of the crime. Judge Mishler's finding that there was "abundant proof of probable cause" and that the search was reasonable is overwhelmingly supported by the evidence in the record before us. The fact that a search warrant might have been obtained is not a controlling factor. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Under the circumstances of this case it was more important to make the search at once in order to pursue effectively and promptly the necessary investigation into the details of the robbery, the existence of collaborators or accomplices and the identity of witnesses. It was also proper to attempt to find at the earliest possible moment the pistol used in the hold-up. This case is stronger for the search than were the facts in United States v. Francolino, 367 F.2d 1013 (2 Cir. 1966).

### II

In view of what occurred and what Doyle said outside of his place of residence within a few minutes after the bank robbery, and the finding in his very presence of the gun and the stolen money in the attache case on the floor of the car in front of the driver's seat, the claim made at the trial but not on this appeal that the two written and signed confessions made by him later that afternoon and in the evening of the same day were coerced seems to us to be nothing short of bizarre. We shall not pause to discuss the evidence of alleged physical abuse or the use of force, the extent to which his mental condition affected the confessions, or his rather vague claim that he was told he would get a lighter sentence in a federal court than would have been imposed upon him in a state court as a multiple offender because of

his two prior felony convictions. There were extended hearings on these subjects in the absence of the jury, they are all covered by adequate and complete findings by Judge Mishler, and, on the basis of the testimony taken in the presence of the jury, the jury received detailed instructions. We shall return to these later.

In addition there was the ever present question whether, before making the confessions, Doyle was adequately advised of his right to remain silent and his right to counsel.

With respect to the two signed confessions made on April 22, 1965, we are urged to reverse because of allegedly improper and inadequate advice "as to the right to remain silent," and because of alleged violation of Rule 5(a) of the Federal Rules of Criminal Procedure, citing United States v. Middleton, 344 F.2d 78 (2 Cir. 1965) and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

 It seems that nothing short of a simple, unconditional, and unqualified statement by the police that an accused may remain silent and say nothing will suffice to inform him of his constitutional rights under the Fifth Amendment. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See also Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966), Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Here the first confession, the one to the Suffolk County police, contained the following:

Statement. Robert, I wish to advise you that anything you say may be used against you in a Court of Law. You may call an attorney, or use the telephone to call whomever you wish.

A. I know that anything I say can be used against me. I don't want to call a lawyer, and I don't want to use the telephone.

And the second confession, the one to the FBI, contained the statement:

Special Agent Achenbach has advised me that I do not have to make this statement and that anything I do say can be used against me in a court of law. Special Agent Achenbach has advised me that I have the right to consult an attorney of my own choice or anyone else before saying anything at all and that if I cannot pay for a lawyer the judge will get one for me.

The second confession was not introduced as part of the Government's case in chief but was used on cross-examination of Doyle after he took the witness stand in his own defense. United States v. Curry, 358 F.2d 904 (2 Cir.), cert. denied, 385 U.S. 873, 87 S.Ct. 147, 17 L.Ed.2d 100 (1966). And see Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954).

In addition to what appears on the face of the first confession, however, there was explicit testimony that Doyle was told he need make no statement whatever. Judge Mishler's finding on this subject is:

I further make the specific finding that Sergeant or Detective—Sergeant Povoromo advised this defendant that he need not make a statement, that this defendant said that he was 'glad to get it over with'; or 'happy to get it over with'; and that Detective Sergeant Povoromo told him he need not say anything.

We think Doyle's rights under the Fifth Amendment were fully and properly protected.

 Nor was there any unnecessary or unreasonable delay in taking Doyle before the Commissioner for arraignment. The robbery took place about 2:30 P.M. on April 22, 1965. He was arraigned the following morning. What occurred in Suffolk County prior to the time Doyle was handed over to the FBI, which Doyle himself says was 7 P.M., was in the ordinary course of the investigation it was the duty of the Suffolk County police to make. As Doyle admitted immediately after his arrest that he "did it," and the attache case and its contents were found without any delay whatever, the testi-

mony reveals little time consumed in the interview which led to the first signed confession at about 5:55 P.M. What did take a few hours was the driving to the police station and back to his home as he disclosed the route he had followed after the hold-up, the search for the hat he had worn and had thrown out near a thickly wooded portion of the highway, the search of his home, in which he fully cooperated, and the line-up at the bank, where he was identified as the robber by the bank employees. He was also questioned about other bank robberies in the vicinity. The police had to be as sure as circumstances made possible that he had no accomplices and that there were no other firearms concealed at the house or elsewhere.

The turnover to the FBI necessarily consumed some time, as proper records cannot be made in a moment or two. The trip by car from the Lake Ronkonkoma region to the Manhattan headquarters of the FBI must have taken at least two hours. After arriving in Manhattan it was necessary to complete the procedures of photographing and finger-printing. He was lodged in the Federal House of Detention on West Street at a reasonably early hour in the evening and was arraigned promptly the next morning.

■ This was no case of prolonged questioning or harsh treatment of any kind. While the confession to the FBI was only produced and used on the cross-examination of Doyle for a limited purpose, it might well have been fully admissible on equal terms with the confession to the Suffolk County police. In any event, no claim of undue delay under Rule 5(a) was made at the trial with respect to the confession made to the FBI and in the absence of a clear violation of that Rule, this Court will not consider claims of undue delay in arraignment for the first time on appeal. United States v. Indiviglio, 352 F.2d 276 (2 Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).

III

As we have already said, there were two very damaging oral statements, the two written and signed confessions and another document that might be considered of at least as great probative force as any of these. This document was a letter to the Commissioner before whom Doyle was arraigned asking for bail for the purpose of earning some money to pay bills before his inevitable incarceration. He wrote:

I've never before, in my life, commited such a terrible crime and, to be honest, I can't really say just why I did it this time, I assure you, it's not really my true character to do that sort of thing.

The instructions on the subject of these "admissions" and "confessions" were comprehensive and correct. No part of these carefully prepared instructions bears any resemblance to what counsel is pleased to call "a boiler plate" or "filing cabinet" charge. The jury was instructed that any proof of this character must be entirely disregarded unless the jury was convinced "beyond a reasonable doubt that the confession was made voluntarily and intentionally." In this connection the jury was to take into consideration Doyle's mental condition at the time and his ability to understand what he had been told about his right to counsel and to remain silent. With reference to the alleged promise that Doyle would receive a lighter sentence in a federal than in a state court, the jury was instructed that a confession is not voluntary "if it was made or induced by some threat of harm or some offer or promise of immunity from prosecution or leniency in punishment." This would seem to cover every phase of this segment of the case. But counsel for Doyle seeks a reversal of the judgment of conviction because: (1) it was not made sufficiently plain to the jury that what was said to them on the subject of voluntariness was just as applicable to the isolated or detached "admissions" as it was to the written and signed confessions; and (2) that

"the jury was not told that its findings as to the voluntariness of any admission or other statement must be unanimous and that if there was any reasonable doubt in the jury's mind concerning an admission, this doubt must be resolved in favor of the defendant."

 With respect to the first of these two points, it is clear to us that Judge Mishler intended his instructions to be applicable to both "admissions" and "confessions," and that they were so understood by counsel, S.M. pp. 2057, 2061. Nor do we believe the jury was misled. Had any clarification been desired or even thought of there was ample opportunity to ask Judge Mishler to make some elaboration. The purport of the second point is not clear in the record of the requests to charge and the exception noted at S.M. p. 2057. The general idea seems to be that, in a criminal case in which "admissions" or "confessions" are received in evidence, the jury should be instructed not to consider any of such "admissions" or "confessions" until after making a separate, unanimous determination as to each such "admission" or "confession" that it was voluntary, intentional and uncoerced. Such a ruling finds no support in any authority to which our attention has been called or our research disclosed. It would in our judgment serve no other end than confusion and delay. We think the following excerpt from the charge taken in context with the instructions relative to "admissions" and "confessions," already adverted to, sufficiently and correctly covers the subject:

The Government must prove every essential element of the crime beyond a reasonable doubt.

It doesn't mean that you must believe the testimony of every Government witness as being true beyond a reasonable doubt, or that every piece of evidence they have offered is true beyond a reasonable doubt. It means only that they must prove every essential element of the crime beyond a reasonable doubt.

We are glad to express our appreciation of the able presentation of appellant's points by Patricia A. Garfinkel as representative of the Legal Aid Society.

Affirmed.