**UNITED STATES of America,**

v.

**Salvatore TOZZI, Defendant.**

**No. 70 CR 136.**

United States District Court,
E. D. New York.

Jan. 15, 1971.

Aaron R. Schacher, Brooklyn, N. Y., for defendant.

E. R. Korman, New York City (Edward R. Neaher, U. S. Atty., of counsel), for the Government.

## MEMORANDUM and ORDER

DOOLING, District Judge.

After the acquittal of the defendant Costa and the report of disagreement as to the defendant Tozzi, reargument of the motion to suppress the evidence obtained in the search of defendant Tozzi's motor vehicle was invited in view of the emphasis given to the alleged applicability of Preston v. United States, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, in light of the separation in time and place of the search of the motor vehicle from the arrest in the present case. Reconsideration of the motion results in adherence to the earlier conclusion that the search of the car was not an unconstitutional search and that the evidence produced by the search is admissible in evidence against defendant Tozzi.

■ Defendant first argues that there was no reasonable ground or probable cause for arresting defendant Tozzi. The contention must be rejected. Agent Sooker learned from his superior that an Earl's Rental truck, deeply implicated in the morning's hijacking at Kennedy, was being returned at the very moment to Earl's rental station in lower Manhattan; Sooker was told to get there if possible while the people were returning the vehicle. When Sooker arrived at Earl's the defendants had left but were pointed out to him and he and his partner followed and arrested them. They had no rational alternative to what they did.

Defendant next argues that assuming that the agents could search him and Costa at the time and place of arrest they could not, minutes later and two and a half blocks away, take them indoors at the Earl's station and require them at that point to turn out their pockets and submit to thorough personal search. The objection here is connected to two things, the discovery of the incriminating list of metals in Tozzi's wallet and the obtaining from him of his automobile keys.

■ What occurred at the Earl's Rental Station was certainly a search. It was an adjourned session of the "pat-down" that took place on the street at the scene of the arrest. Perhaps there was no risk of a mob scene, and there was in fact no evidence that the crowd that could have gathered would have been hostile rather than inquisitive. But the search could properly be delayed and shifted to the Earl's Rental Station office as an ordinary and sensible procedure to avoid risk of a street scene. The agents were justified in confining their first search to a mere assurance that the defendants were not armed. Essentially the argument now made was rejected as "entirely frivolous" in United States ex rel. Muhammad v. Mancusi, 2d Cir. 1970, 432 F.2d 1046, 1047.

■ The principal argument made is based on Preston as reinforced by Stoner v. California, 1964, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856, and Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. See also Dyke v. Taylor Implement Mfg. Co., 1968, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538. These cases emphasize that arrest does not justify search of a structure or a motor vehicle remote in time or place from the arrest, and emphasize the related idea that once an accused is under arrest and in custody, then a search

made in another place, without a warrant, is simply not "incident to the arrest". Time and place and separation in time and place are in such contexts relative terms. The test is not physically metrical but must be of the connection of the episodes claimed to be incident to one another. If the arrest of a man and search of his vehicle have transactional unity and the separation of the one sub-part of the transaction from the other sub-part in time and place is itself simply an aspect of the sensible and uninterrupted pursuit of the unitary transaction to its rational conclusion, it would appear not to be within the inhibition of *Preston*. Here, the sequence of events represented steps in a rational progression toward an objective and not a discrete exploration for new matter that merely took advantage of the fact that there had been an arrest and that there was a car owned by the arrested person which was available for search and might yield evidence of some crime or other. A daylight robbery of readily concealed materials of great value had taken place, the suspect vehicle had been traced—empty—to the hands of the arrested men, a search of their pockets disclosed a key to the car at which one of them had been arrested. The circumstances dictated a prompt return to the scene of the arrest and to the car, and that the police examine the car at least from the exterior. Having done so much and having seen what they then saw, pursuit of the fruits of the robbery, manifestly led them inside the car to the shipping paper visible on the car's seat. That the whole transaction may have taken a half hour to three quarters of an hour, and that it might have been done at the instant of arrest hardly weighs where tightly coupled event makes a unity of the arrest and the search of the motor vehicle. To look at it otherwise is to deny to law enforcement officers the right to imaginative pursuit and intelligent action.

Quite apart from whether the search could be sustained as incidental to the arrest, the search was reasonable. What was known about the morning hijacking, the use of an Earl's van in it, the possession by Tozzi of what appeared to be a list of the stolen precious metals *, and his possession of the keys to the vehicle near which he had been arrested were enough to require the agents to return to the automobile and consider there what their next step should be. Arguably the vehicle was innocently present on the street two and a half blocks from the place at which the empty robbery truck had been returned. Possibly it had not been driven to or from the scene of the robbery. Conceivably it had in it no weapon connected with the robbery although the suspected robbers, known to have been armed during the robbery, were unarmed when arrested. Its criminal utility was now at an end since arrested suspects could not use it in flight—although possible confederates might still use it for flight. But any innocence that imagination could marshal around the vehicle would seem to be outweighed by the fact that it was the car of one of the suspected robbers and could have in it—in view of the robbers' apparent intention to return to it from the Earl Rental Station—perhaps some part of the fruits of their robbery, or evidence leading to the fruits of the robbery and the instruments used in the robbery. When the agents looked through the window and saw what they saw visible on the front seat of the car, doubt ended. Probable cause was manifest, and

---

* At the trial defendant Tozzi denied that the list came from his wallet, and asserted that the agents did not produce it until after they had returned from the search of the car. If a choice of the versions (on this renewal of motion) is required, the finding is that the slip came from defendant Tozzi's wallet during the search at Earl's Rental Station.

the duty to search the car accrued completely.

Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, still embodies a relevant principle and the Supreme Court itself has noted it as reaffirmed and followed in Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, and as germane to the proposition that the mobility of a car may make a search of it without a warrant reasonable when a different result might be reached as to a search of real property (Cooper v. California, 1967, 386 U.S. 58, 59, 87 S.Ct. 788, 17 L.Ed.2d 730). See Chambers v. Maroney, 1970, 399 U.S. 42, 49–50, 90 S.Ct. 1975, 26 L.Ed.2d 419. Only a moment's reflection is necessary to the realization that if the occupants of the car have been arrested, search of the car in one narrow sense always becomes a notionally discrete operation, and can therefore be made the subject of an entirely distinct set of legal requirements. But the very notion of *Carroll* and the cases that have followed it is that notwithstanding the arrest of those who are in responsible charge of an automobile, the car may be searched before it takes flight because even deserted cars can be moved by undisclosed confederates with the greatest facility. From this it follows that the separate automobile, if it is to be made the subject of separate legal analysis and a distinct legal procedure before a search is made, has to be secured in some way. At that point it becomes apparent, and *Chambers* now makes it the law, that the search can go forward at once if the peace officers have probable cause to conduct a search or obtain a warrant for a search. As the Court points out in Chambers v. Maroney, *supra*, at 52, 90 S.Ct. at 1981, "for constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given

probable cause to search, either course is reasonable under the Fourth Amendment." In Chambers v. Maroney, the Court pointed out that the automobile could have been searched when it was stopped and the arrest made. So in the present case, but for the undesirability of creating a scene at the point of arrest, it would have been reasonable to search the automobile at the end of a complete and immediate search of the defendant Tozzi's person, which would have turned up his keys to the car and the list connecting him to the crime. Nothing depends then on the fact that the search took place a little later and after there had been a less hurried search of defendant Tozzi. The car was mobile, the agents fortunate that, when they returned to it, the car was still there with the incriminating evidence in it. The presence in it of the visibly incriminating evidence was all but assurance that the car would soon be moved or soon be purged of any evidence of guilt.

It is concluded that the renewed motion must again be denied. It is accordingly

Ordered that the motion of defendant Tozzi made under date of December 16, 1970, is in all respects denied.