David **DAYGEE**, Appellant,

v.

**STATE of Alaska**, Appellee.

No. 1408.

Supreme Court of Alaska.

Oct. 12, 1973.

Robert H. Wagstaff, of Friedman, Wagstaff, Ravin & Rubinstein, Anchorage, for appellant.

John E. Havelock, Atty. Gen., Juneau, Seaborn J. Buckalew, Jr., Dist. Atty.,

Charles M. Merriner, Asst. Dist. Atty., and Stephen G. Dunning, Asst. Dist. Atty., Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER, and FITZGERALD, JJ.

## OPINION

ERWIN, Justice.

On March 10, 1970, appellant David Daygee was indicted by the Anchorage Grand Jury for possession for the purpose of sale of 15 pounds of marijuana and 4,000 tablets of LSD.

After jury trial, appellant was found guilty of possession of marijuana for the purpose of sale, but no verdict was returned concerning the amphetamines.[1]

On March 4, 1970, at approximately 10:00 o'clock at night, Alaska State Trooper Rowe was proceeding east on Tudor Road in Anchorage. He passed a 1969 Mustang on Boniface near the stop sign at the intersection of Boniface and Tudor. Trooper Rowe's suspicions were aroused by the strange angle of the parked car and he watched the car in his rear view mirror as he continued east on Tudor between a half-mile and a mile. He then stepped suddenly on his brakes to observe the effect on appellant. According to Rowe the Mustang sped around the corner heading west on Tudor. He then turned around and pursued the car, reaching speeds of 130 mph before he caught up with the Mustang in the vicinity of Wright Street. Trooper Rowe stated that he stopped the car for speeding; however, he did not clock the other car, and at the time he caught up with the Mustang, it was going 35 mph. The speed limit on Tudor is 50 mph and changes to 35 mph in the area where appellant was stopped, but in the trooper's opinion, the car had previously been exceeding the speed limit. As soon as he turned on his red light, appellant's car pulled over to the side of the road.

Trooper Rowe approached the Mustang on foot. When he reached the car, he observed an open quart bottle of beer on the front seat floor before the passenger Steven Staats. In addition he smelled a particular odor which he described as burning marijuana.

The officer directed the beam of his flashlight on the back seat of the car. There he saw two grocery bags, one directly on the floor of the car, the other on the seat in an open cardboard box. On top of the one on the seat was a clear plastic bag containing a dark material. He asked both Mr. Daygee and Mr. Staats what the clear bag was. They both answered that they didn't know and when he asked if it belonged to either of them, they replied, "no". He asked them to hand him the clear bag and Mr. Staats picked it up, passing it to Daygee, who in turn handed it to the trooper. After observing the dark material closely through the plastic bag, the trooper was of the opinion that the bag contained marijuana.

At that point the officer ordered the two men out of the car and searched them. He found a warm pipe which smelled of marijuana and contained the residue of burnt marijuana in Mr. Staats' back trousers pocket. The pocket also contained a pouch of marijuana.

Another police car soon arrived in response to Officer Rowe's radio call for assistance. Rowe subsequently informed both men that they were under arrest and placed one of the men in his car and the other in the newly-arrived police vehicle. Rowe then returned to appellant's vehicle and in his words "inventoried" it because the car was about to be impounded by a private towing service. Trooper Rowe removed the two grocery bags, together with the box in which one of the bags was sitting, from the car and placed them in his own vehicle. In so doing he noticed several small scales which were in the box beside the grocery bag. He also noticed

---

1. This court takes judicial notice of the fact that LSD is not an amphetamine. However, as no verdict was returned on this count, it is irrelevant to this appeal.

bricks of an unknown substance wrapped in opaque paper which were inside the grocery bags. All these items were placed in the trunk of the patrol car where they remained until the time the officer finished the shift. When his shift was over the items were placed on the floor next to the desk of the patrol sergeant preparatory to placing in the evidence locker.

The packages were subsequently opened by one of the police personnel on advice of the fire marshal that there was danger of fire because the packages felt warm to the touch. The packages contained bricks of marijuana.

The principal question on appeal concerns the legality of the search and seizure of the contraband contained in appellant's automobile. There are two incidents in this case which call for search and seizure analysis.[2] The first involves stopping the vehicle and seizure of the clear plastic bag of marijuana; the second incident concerns the police officer's seizure of the plastic bag containing marijuana bricks, several weighing scales, and paper bags from the back seat of the automobile. Each of these incidents will be discussed in turn.

## SEIZURE OF THE PLASTIC BAG OF MARIJUANA.

 After stopping appellant's car for speeding, Officer Rowe approached the car on foot. He then shone his flashlight into the interior of the car where he observed a clear plastic bag which contained a leafy substance with seeds in it. The officer subsequently demanded that appellant hand him the bag. We hold that the officer's sighting and demand for the bag of marijuana was not an illegal search and seizure, as the bag was in the officer's plain view. A search implies an invasion of privacy, a prying into that which is meant to be concealed. It is no search to observe that which is in the plain view of an officer who is rightfully in a position to have that view.[3] That the officer's view in this case was aided by a flashlight is irrelevant. The flashlight beam merely illuminated that which would have been visible in the light of day.[4] Nor does the seizure of the marijuana which the officer saw violate the seizure restriction of the fourth amendment. An officer may seize evidence which is legitimately in his plain sight.[5] It is not necessary that the contra-

2. No issue was raised in this appeal as to the propriety of opening the packages at the police station.

3. As this court stated in Weltz v. State, 431 P.2d 502, 505 (Alaska 1967):
 A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it is generally held that the mere sight of that which is open to view is not a "search".
 This definition was taken from People v. West, 144 Cal.App.2d 214, 300 P.2d 729, 733 (1956); Klockenbrink v. State, 472 P. 2d 958 (Alaska 1970); see Coolidge v. New Hampshire, 403 U.S. 443, 466–467, 91 S.Ct. 2022, 29 L.Ed.2d 564, 583 (1971); Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067, 1069 (1968); Ker v. California, 374 U.S. 23, 42–43, 83 S.Ct. 1623, 10 L.Ed.2d 726, 744 (1963).

4. In a case based upon facts similar to the present case the Kentucky Court of Appeals said in Childers v. Commonwealth, 286 S.W. 2d 369, 370–371 (Ky.1955):
 The case at bar is not like one where the officer opens a door on accused's car or raises a shade in his house without a search warrant to see what is inside. Here the natural darkness concealed the wire from view but the flashlight dispelled the screen of darkness without the officer resorting to a search. The use of a flashlight here is comparable to the use of field glasses at sea and does not amount to a search without a warrant as prohibited by the constitutional guarantee. See also United States v. Lee, 274 U.S. 559, 563, 47 S.Ct. 746, 71 L.Ed. 1202, 1204 (1927); Chapman v. United States, 346 F.2d 383, 387 (9th Cir. 1965); State v. Hanawahine, 50 Haw. 461, 443 P.2d 149 (Hawaii 1968); State v. Daniels, 252 S.C. 591, 167 S.E.2d 621 (1969).

5. Coolidge v. New Hampshire, 403 U.S. 443, 465–466, 91 S.Ct. 2022, 29 L.Ed.2d 564, 582–583 (1971); Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067, 1069 (1968); Erickson v. State, 507 P.2d 508, 513 (Alaska 1973).

band be positively identified before it is seized.[6] The officer, who had extensive training in detecting marijuana, testified that he recognized the smell of marijuana burning and the substance in the bag looked like marijuana, which he had seen previously. The officer thus had cause to believe a misdemeanor was committed in his presence other than the traffic event.[7] The seizure of this item was therefore valid.

## THE SEIZURE OF THE TWO GROCERY BAGS AND THE CARDBOARD BOX.

After Officer Rowe arrested Daygee and Staats and removed them to the police vehicles, he called a wrecker to come for the car. He then returned to the car and removed all valuables from the passenger area to his own police vehicle for safekeeping prior to the impoundment. Among the articles removed from the car were two grocery bags and a cardboard box containing 15 pounds of marijuana bricks wrapped in rough paper, several postal scales and five or six rolls of plastic baggies.

The validity of automobile searches without a warrant was conceded until recently by most authorities because of the 1925 decision of Carroll v. United States[8] upholding such searches under the theory that an emergency situation existed by virtue of the mobile character of the vehicle. In the *Carroll case*, the court held that the police could stop a car on the highway and search it without a warrant if they had probable cause to believe the car was transporting contraband. The reason for this exception to the search warrant requirement was the mobility of the automobile, which makes it impracticable to obtain a search warrant, since the car and its illegal contents could be well out of the jurisdiction before the warrant could be served.

The *Carroll* case and the mobile vehicle cases which immediately followed are typical of the prohibition era.[9] Under the Volstead Act, transporting contraband liquor was a misdemeanor.

The next significant vehicle search case came almost 35 years later in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). There state officers arrested the defendants, who were sitting in a parked automobile, on a vagrancy charge. The defendants were taken to the station house and their car was removed to a garage where it was searched. The de-

---

6. Hughes v. State, 86 Nev. 584, 471 P.2d 245, 247 (1970).

7. Howes v. State, 503 P.2d 1055, 1059–1060 (Alaska 1972) ; Miller v. State, 462 P.2d 421, 425–426 (Alaska 1969).

8. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

9. Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931) ; Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938) ; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). *Husty* and *Scher* permitted searches of stationary vehicles which is arguably no longer permissible after the recent decision of Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). See p. 1164, *infra*. In *Husty*, prohibition officers had reliable information that Husty, a known bootlegger who had been twice convicted of Prohibition Act violations, had liquor in his car. The officers found the car, waited until Husty returned, searched the car which contained 18 cases of liquor, and then arrested Husty. The court upheld the search under *Carroll*.

The Court ruled in *Scher* that where there is probable cause to search for contraband liquor while the automobile is moving on the road, the right to search is not lost when the automobile is subsequently parked in an open private garage, observable by the officers from the outside. The officers may enter the garage and search the car there under *Carroll*. In *Brinegar*, officers parked near the Missouri-Oklahoma line saw Brinegar, a known bootlegger, drive by in a heavily-loaded car. The officers stopped and searched the car and found 13 cases of liquor. The court held the search reasonable under *Carroll*. In a dissenting opinion, Justice Jackson, joined by Justices Frankfurter and Murphy, wrote:

> I dissent because I regard it as an extension of the Carroll Case, which already has been too much taken by enforcement officers as blanket authority to stop and search cars on suspicion. 338 U.S. at 183, 69 S.Ct. at 1314.

fendants were later convicted of conspiring to rob a bank, largely on evidence found in the warrantless automobile search. The court reversed the conviction, stating that the search was not incident to the arrest since it occurred at another time and place. The court also stated that, assuming the propriety of the state's assertion that the police had probable cause to search the car because they reasonably believed it was stolen, the search was still not justified by the *Carroll* exception to the search warrant requirement because the automobile in this case was in fact immobilized. Since the defendants were under arrest at the police station and the car was in police custody at a garage, there was no danger that evidence contained in the car could be destroyed or that the car could be removed from the jurisdiction.

Six years later in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the court retrenched on *Preston*, while purporting to distinguish it, and extended the *Carroll* rule far beyond its original rationale. In *Chambers*, defendants were arrested in their vehicle after robbing a gas station. While they were being booked at the station house, their vehicle was searched and the evidence found therein was subsequently used against them. Although *Preston* expressly stated that even if the police had probable cause to search the vehicle, they had to obtain a warrant once the exigent circumstances of mobility were removed, the court in *Chambers* distinguished *Preston* as a situation where there was no probable cause to search. In *Chambers*, the court upheld the later search at the station house on the theory that there was still probable cause to search and the automobile was still mobile. The court stated that the car was still mobile despite its presence at the station because the fourth amendment did not authorize the seizure and prevention of access to the automobile until a search warrant was obtained.

In the recent decision of Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the court again considered this problem and drew back somewhat from the great latitude allowed automobile searches in *Chambers*. In *Coolidge*, the police arrested defendant in his home for a brutal murder. At the same time they impounded his car which was parked in the driveway and two days later took it to the police station where it was searched without a warrant. The state, relying on *Chambers*, contended that the police may make a warrantless search of an automobile whenever they have probable cause to do so. The court replied that this situation did not come within the *Carroll* exigency exception to the warrant requirement because:

> [B]y no possible stretch of the legal imagination can this be made into a case where "it is not practicable to secure a warrant . . . ." 403 U.S. at 462, 91 S.Ct. at 2036.

The court noted that since defendant was in jail, his wife under police protection in another town, and defendant's premises were guarded by policemen, the car was not mobile in a constitutional sense. The court then attempted to distinguish *Chambers* stating that *Chambers* only applied where an arrest was made on the open highway.

In practice, the *Carroll* rule has been seldom utilized for search of motor vehicles since most vehicle searches were justified as incident to arrest of the driver under the *Harris-Rabinowitz* [10] line of cases which permitted search of an entire house incident to the arrest of a person therein.[11]

The decision of Chimel v. California[12] which strictly limited the area of such search to the immediate physical area

---

10. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) ; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

11. La Fave, Warrantless Searches and the Supreme Court, 8 Crim.L.Bull. 9, 18 (1972).

12. 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

where the defendant was arrested, and reversed the *Harris-Rabinowitz* rule now brings sharply into focus the underlying rationale of Carroll v. United States. *Appellant urges here that Chimel and its progeny must be read to prevent any searches of automobiles or individuals on the grounds that no possible exigency situation existed when the vehicle or the suspect were in police custody.*[13]

We note, however, that this view was not adopted by the United States Supreme Court [14] or this court [15] with regard to the intensity of search of a suspect arrested for serious crimes and has been rejected with regard to automobile searches by the United States Supreme Court [16] and the greater numbers of recent decisions in this area.[17]

Appellant asks, and our dissenting colleagues would hold that the Alaska Court interpret Alaska constitutional provisions on search and seizure more strictly than the similar provision of the United States Constitution to prevent any automobile searches once the driver has been arrested and is outside the vehicle.[18]

■■ We do not find this case to be an appropriate one in which to decide the issue of whether or not a police officer may search a motor vehicle under the circumstances highlighted in Chambers v. Maroney, for we view the search herein as a search incident to the valid arrest of the driver and the passenger of the motor vehicle.[19] We hereby adopt the view that a

---

13. Nothing herein should be taken to indicate the validity of inventory searches which appear to be clearly outside exigency rules. See the discussion of the inventory search problem in Comment, Chimel v. California: A Potential Roadblock To Vehicle Searches, 17 U.C.L.A.L.Rev. 626, 639–42 (1970) ; Comment, The Aftermath of Cooper v. California: Warrantless Automobile Search In Illinois, 1968 U.Ill.L.Forum 401, 406–08 (1968). *Cf.* Ramon v. Cupp, 423 F.2d 248 (9th Cir. 1970) (automobile search) ; McCoy v. State, 491 P.2d 127, 139 (Alaska 1972) (dissenting opinion) ; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 61–65, 26 L.Ed.2d 419, 433–436 (1970) (dissenting opinion, Harlan, J.).

14. Peters v. New York, 392 U.S. 40, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968).

15. McCoy v. State, 491 P.2d 127 (Alaska 1971).

16. Cady v. Dombrowski, —— U.S. ——, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) ; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970). On the proposition that *Carroll* would not apply after arrest of the occupants of the vehicle, in that the police could resort to the lesser intrusion of immobilizing the car until a warrant was obtained, the court stated : "But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant." 399 U.S. at 51–52, 90 S.Ct. at

1981. In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), it was held that once there were grounds to arrest the driver of a car, for alleged unlawful possession of a gun, the "search of his person and of the car incident to that arrest was lawful." While strong dissents were written on other points covered in the *Adams* opinion, there was no dissent as to the search incident to the arrest. *See also* United States v. Mahanna, 461 F.2d 1110 (8th Cir. 1972).

17. United States v. Ragsdale, 470 F.2d 24 (5th Cir. 1972) ; United States v. Mehciz, 437 F.2d 145 (9th Cir. 1971) ; United States v. Free, 141 U.S.App.D.C. 198, 437 F.2d 631 (1970) ; United States v. Gerlach, 350 F. Supp. 180 (E.D.Mich.1972) ; North v. Superior Court, 104 Cal.Rptr. 833, 502 P.2d 1305 (1972) ; Commonwealth v. Pellier, 289 N.E.2d 892 (Mass.1972) ; Harris v. State, 486 S.W.2d 88 (Tex.Cr.App.1972).

18. Appellant asks for such a conclusion under Baker v. City of Fairbanks, 471 P.2d 386, 402 (Alaska 1970), where this court noted we were not ·bound by the interpretation of federal constitutional provisions and we were free to develop and expound principles found concurrently in our own constitution.

19. United States v. Jones, 452 F.2d 884 (8th Cir. 1971) ; United States v. Doyle, 373 F.2d 875 (2nd Cir. 1967) ; United States v. Kapatos, 255 F.Supp. 332 (S.D.N.Y. 1966) ; State v. Kelley, 107 Ariz. 8, 480 P. 2d 658, 659 (1971), cert. denied, 404 U.S. 866, 92 S.Ct. 128, 30 L.Ed.2d 110 (1972) ; People v. Webb, 66 Cal.2d 107, 56 Cal.Rptr. 902, 424 P.2d 342 (1967) ; State v. Raffone, 161 Conn. 117, 285 A.2d 323 (1971) ; Boat-

search is incident to arrest as long as it is made substantially contemporaneously with the arrest.[20] The search of the vehicle should not depend on whether or not the person or persons arrested are in the car or have been recently removed from the car for the purposes of effectuating an arrest. We reach this conclusion because it would be an unusual situation for a police officer not to remove a suspect from a car while going through the arrest process, both for reasons of safety and because of the practical physical limitations of effecting an arrest in such a confined area.

We wish to emphasize in the case at bar that one of the bags seized pursuant to the arrest herein is the same bag that had contained the package of marijuana which had been handed to the officer. Since the bag was filled with something, it is difficult to postulate any theory which requires the police officer to ignore what common sense dictates—the seizure of the bag on the reasonable ground it contains additional contraband.

The search referred to above, however, would only go to visible areas within easy reach of the suspect and would not permit the opening of closed spaces or opening of closed containers. The car should then be immobilized and stored pending further ju-

dicial process of search or release to a proper party.

 In this case, the marijuana in the clear plastic package was clearly seized incident to the arrest. Similarly the contents of the shopping bags plus the baggies, scales, etc., were subject to the same search and seizure incident to arrest. There is an additional problem in the case at bar, however, for in fact no search was made of the bags at the time of arrest. The question then becomes whether these items could be removed from the car to the patrol car and subsequently to the police station if no search was made. The answer must be yes. Having found the package of marijuana on top of a bag containing other packages, it was perfectly proper to take those items to the police station for safekeeping. This would not be for "inventory" purposes but to prevent possible loss or destruction of evidence. With the probability existing that additional drugs were present, permitting them to be left in an impounded car in the yard of a commercial towing company not under police control is not a reasonable requirement.

There was no error in removing the grocery bags and the cardboard box from the car under the facts as noted herein.[21]

right v. State, 472 S.W.2d 765 (Tex.Cr.App. 1971).

20. United States v. Ciotti, 469 F.2d 1204 (3rd Cir. 1972) ; United States v. Tozzi, 322 F.Supp. 1, 3 (E.D.N.Y.1971) ; United States v. Kapatos, 255 F.Supp. 332, 335 (S.D. N.Y.1966) ; Merrill v. State, 423 P.2d 686, 700 (Alaska 1967) ; State v. Kelley, 107 Ariz. 8, 480 P.2d 658, 659 (1971) ; Madeley v. State, 488 S.W.2d 416 (Tex.Cr.App.1972) ; W. Ringel, Searches and Seizures, Arrests and Confessions, § 286 at 368 (1972). Cf. Mc-Coy v. State, 491 P.2d 127, 130 (Alaska 1971) ; Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

It is clear that the search must follow immediately after the suspects are removed from the vehicle and restained and may not be delayed so to later search the vehicle at the police station. The impossibility of searching the car while the suspects are therein or of physically arresting them in the car creates a practical problem similar to "the

chicken or the egg", particularly in those areas of Alaska where the state police troopers must effectuate the arrest without recourse to the aid of a fellow officer. While our dissenting colleagues decry the indefiniteness of such a standard, it is essentially the same balancing process noted in Smith v. State, 510 P.2d 793 (Alaska 1973), with the clear requirement the police have the burden of proof in establishing they acted with dispatch in effecting the arrest and any search incident thereto.

21. Appellant does not challenge in the trial court or in his statement of points on appeal the exigent circumstances which caused the contents of the bags to be opened at the police station on advice of the state fire marshal. We again reiterate that the lawful seizure of the items does not carry with it the right to open such packages at a later point in time absent a warrant or exigent circumstances. If such packages are not opened at the time of arrest, then the factors set forth in Erick-

## SUFFICIENCY OF EVIDENCE

Daygee claims that the evidence admitted at trial was insufficient to sustain a guilty verdict for possession of marijuana for the purpose of sale. Since no evidence was admitted as to the 15 pounds of marijuana being unsuitable for personal consumption, appellant contends that the jury could only speculate as to the meaning of the quantity of marijuana. Therefore appellant concludes that the only evidence admitted to show intent was the scales and the plastic baggies which FBI agent Wood testified were "customarily" used in the sale of marijuana.

The state contends that the evidence probative of intent to sell included the two scales, the five or six rolls of baggies, the packaging of the marijuana bricks and the amount of marijuana. The state claims that although no evidence was introduced as to the quantity of marijuana being unsuitable for personal consumption that "the jurors can be assumed to have known enough about the way marijuana is consumed to justify an inference on their part that a person with a large quantity of marijuana would more likely intend to sell it than would a person with a small quantity."

■ There is a disagreement between appellant and appellee as to what standard this court should apply in determining the sufficiency of the verdict. Appellee contends that the proper standard of review is that stated most recently in Jordan v. State, 481 P.2d 383, 387 (Alaska 1971):

> On a motion for a judgment of acquittal the judge must take the view of the evidence and the inferences therefrom most favorable to the state. If he determines that fair minded men in the exercise of reasonable judgment could differ on the question of whether guilt has been established beyond a reasonable doubt, then he must submit the case to the jury. (Citations omitted.)

Appellant agrees that this is indeed the proper standard but claims that this court stated in Allen v. State, 420 P.2d 465, 467 (Alaska 1966), that the above formula is equivalent to that enunciated in Davis v. State, 369 P.2d 879, 882 (Alaska 1962), that "where evidence of guilt was all circumstantial, it must be such as to exclude every reasonable theory consistent with the accused's innocence." Since *Jordan* specifically disapproves *Allen* and *Davis,* it is difficult to understand the argument of appellant. However, it is clear from the facts of this case that the evidence was sufficient to sustain the verdict.

## INCONSISTENT VERDICTS

Citing this court's recent decision of DeSacia v. State, 469 P.2d 369 (Alaska 1970), appellant complains that the verdicts returned by the jury were inconsistent and that the judgment of conviction must therefore be reversed. The jury was given eight possible verdicts: possession of marijuana, possession of amphetamines, possession of marijuana with intent to sell, possession of amphetamines with intent to sell, and the four corresponding negative verdicts. The jury returned only one verdict convicting Daygee of possession of marijuana with intent to sell and no verdict was returned concerning amphetamines.

Appellant contends that he was charged with two counts of the same offense, possession of a drug with intent to sell, the only difference being the substance involved, in one case marijuana, in the other amphetamines.[22] He claims that the circumstances relating to the possession with intent to sell were the same for both drugs and therefore the failure of the jury to reach a verdict on the amphetamines charge is logically inconsistent with the guilty verdict of possession of marijuana with the intent to sell. Daygee concedes that it could be argued that the evidence

son v. State, 507 P.2d 508 (Alaska 1973), become applicable. The circumstances relating to the opening of packages become important and there must appear independent grounds

other than those supporting the seizure to justify the waiver of the warrant requirement at such time.

22. *See* n. 1, *supra.*

concerning the purpose for which the two drugs were possessed was different. The baggies, scales, and packaging of the marijuana were probative of intent to sell the marijuana, but not of the intent to sell the amphetamines. However, Daygee argues that the jury not only did not find that he was possessing the amphetamines with the intent to sell, but did not find that he was even in possession of the amphetamines.

■ The state says that, as appellant conceded, there was evidence of intent to sell the marijuana besides the quantity of marijuana involved, whereas the only evidence probative of intent to sell the amphetamines was the bulk find. As for appellant's contention that the verdict of guilty of possession with intent to sell marijuana is inconsistent with the jury's failure to reach a guilty verdict on possession of the amphetamines, the state says that the jury was told they could return a verdict on the lesser offense of possession. But they were not instructed that they had to return a verdict on the lesser offense if they failed to find possession with intent to sell. Thus they returned no verdict at all concerning the amphetamines. The state also suggests that even if the jury had returned a verdict of not guilty of possession of amphetamines, such a verdict would not have been inconsistent with the guilty verdict of possession of marijuana with intent to sell. The identity of the marijuana was never seriously questioned, however, there was inconsistent evidence as to the nature of the amphetamines. There was testimony that the police thought that the pills were LSD, and conflicting testimony as to how many pills were given to King, the medical technologist, for testing. In addition, only two pills were actually tested.

On the above facts, the verdicts do not seem to reach the high level of inconsistency demanded by this court in *DeSacia*.

## SENTENCING

Appellant argues that the four-year sentence imposed upon Daygee for possession of marijuana with intent to sell was excessive. Appellant's primary argument, the only argument he can legitimately make on the facts of this case, is that offenses involving marijuana possession and sale are akin to the prohibition era when possession and sale of liquor were similarly outlawed. He points to the growing volume of data proving that marijuana is harmless, and evidence of increasing tolerance and use of marijuana in our society. Appellant concludes that since marijuana offenses are in essence *malum prohibitum* that only the most minor sentence should be imposed upon first offenders absent a showing of traffic with minors.

The state points out that Daygee could have been sentenced to 25 years in prison and fined $20,000 and that the facts indicate he was in the most serious class of drug offenders as noted in Waters v. State,[23] that of possession of large quantities of drugs for sale.

■ We find that the trial court properly evaluated the various factors announced in State v. Chaney[24] and succeeding cases and that the sentence is within the zone of reasonableness for the offense charged.

FITZGERALD, J., concurs.

CONNOR, J., with whom RABINOWITZ, C. J., joins, dissents.

FITZGERALD, Justice (concurring).

I agree that the warrantless search of the motor vehicle at the place it was stopped on the highway by the police was valid. My reasoning is reached somewhat differently from that of the plurality. They uphold the search as one incidental to a lawful arrest. I have some difficulty with this view in light of the restrictions placed on such searches by Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

At the time the officer made his search, he had probable cause to believe the vehicle contained marijuana. Under these cir-

23. 483 P.2d 199, 201 (Alaska 1971).

24. 477 P.2d 441, 444 (Alaska 1970).

cumstances, the police were authorized either to make a search of the vehicle or to impound it until a search warrant might be obtained.[1]

CONNOR, Justice, with whom RABINOWITZ, Chief Justice, joins, dissenting:

We agree that the seizure of the plastic bag of marijuana was valid. We disagree that there was a valid seizure of the two grocery bags, the cardboard box, and the contents of those items. The difference between our views concerning the permissible scope of search and those expressed in the majority opinion is not great, but it is nevertheless measurable.

Searches incident to a lawful arrest are, of course, excepted from the constitutional requirement that a search warrant must be obtained. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). But the scope of such searches is limited by the underlying purposes for which they are permitted. These searches are allowed, first, to remove any weapons which might be used to resist arrest or make an escape and, second, to prevent the concealment or destruction of evidence by the arrested person. 395 U.S. at 762–763, 89 S.Ct. 2034.

In the case at bar the police officer ordered the two occupants out of their vehicle. He then searched them. Thereafter he informed them that they were under arrest. They were each placed in separate police vehicles. The police officer then returned to the detained vehicle and took possession of the grocery bags and the cardboard box.

At this point there was, in our opinion, no exigency which justified the seizure of those items under the rationale of Chimel v. California, *supra*. The seizure was not related to protecting the officer against weapons which might be used against him. Nor was there then any danger that the evidence contained in the vehicle might be destroyed. The vehicle was shortly to be

impounded. It was entirely practicable to secure a warrant to carry out a search of the vehicle.

We are persuaded that the correct procedure to follow in cases of this type is that advocated by Mr. Justice Harlan in Chambers v. Maroney, 399 U.S. 42, 61–65, 90 S. Ct. 1975, 26 L.Ed.2d 419 (1970) (separate opinion, concurring in part, dissenting in part). If the police have probable cause to search a detained vehicle, they should seize it, postponing any search until they have obtained a warrant satisfying the constitutional requirements. This procedure would reconcile the claims of both individual privacy and effective law enforcement.

This procedure would relieve law enforcement officers of the burden of making difficult distinctions between vehicles exhibiting sufficient mobility to justify warrantless search and vehicles exhibiting insufficient mobility. Standardizing the warrant requirement by assimilating automobile searches to house searches would tend to avoid the confusion that now exists because proper procedure is difficult to determine at the scene of the arrest. More uniform procedures could then be employed by the law enforcement authorities.

> "[T]he law of search and seizure should be written with a view to those whose conduct it is meant to control. Subtle distinctions, which even lawyers find hard of application, should be avoided." [1]

When an arrest is effected on the highway, the typical police practice is to take the car to a police station, garage, or other place of impoundment, to clear the highway of obstacles and to "protect" the arrestee's property.[2] Thus, limited seizure imposes no great or unusual burden on the police.

Not only is limited seizure a workable rule for governing police conduct, it is a well-precedented police practice. In many situations, the police make an arrest in a home or are called to the scene of a crime where they have had no advance warning

---

1. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

1. Ferguson v. State, 488 P.2d 1032, 1035 (Alaska 1971).

2. 17 U.C.L.A. L.Rev. 639, 640 (1970).

of the need to obtain a search warrant. Routine police practice on these occasions is to secure the house or structure until a warrant may be obtained.

A limited seizure would permit an independent magistrate rather than the police to decide whether there is sufficient evidence to justify an invasion of a person's privacy. As the Supreme Court stated in McDonald v. United States, 335 U.S. 451, 455–456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948):

> "We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals."

Any arrestee who prefers to have his car searched and released immediately may exercise his option to consent to the search of the car.[3]

Finally, a significant advantage that emerges from the limited seizure procedure is a reduction of the danger of pretextual searches. Permitting warrantless automobile searches presents a serious temptation for the well-intentioned but overzealous police officer to initiate search on less than probable cause.[4] Unfortunately, the courts seldom have an opportunity to review the non-productive illegal search. Typically, the citizen whose privacy has

suffered invasion just goes his way, with perhaps a diminished respect for the legal system.[5]

It is our opinion that the search and seizure of the box and grocery bags from the back seat of Daygee's automobile was constitutionally invalid under Article I, Section 14, of the Alaska Constitution. Therefore, the subsequent search of the bags at the police station, with the resulting discovery of the marijuana bricks, plastic bags, weighing scales, and amphetamines, was tainted by the illegal invasion of appellant's automobile.[6] Since the evidence obtained in the course of the search was admitted in Daygee's trial, we would reverse the conviction.[7]

We agree, however, with the disposition of the other issues treated in the majority opinion.

---

3. Chambers v. Maroney, *supra*, at 64, 90 S.Ct. 1975.

4. See Justice Jackson's dissent to Brinegar v. United States, 338 U.S. 160, 183, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

5. *Id.*, at 181, 69 S.Ct. 1302.

6. Wong Sun v. United States, 371 U.S. 471, 484–485, 83 S.Ct. 407, 9 L.Ed.2d 441

(1963); Silverthorn Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

7. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961).