## BILLIE JOE WILLIAMS V. STATE

No. 27,489. March 30, 1955
Rehearing Denied May 11, 1955

*Joe H. Jones, Lester L. May,* and *Elizabeth Carp,* Dallas, for appellant.

*Henry Wade,* Criminal District Attorney, *William F. Alexander* and *Charles S. Potts,* Assistants Criminal District Attorney, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Under an indictment charging that with lascivious intent he knowingly and intentionally exposed his private parts and genital organs to a named female under the age of sixteen years, appellant was found guilty and his punishment was assessed at

two years in the county jail. His application for suspension of sentence was not granted.

The named female, who was 15 years of age at the time of the alleged offense, testified that appellant drove very slowly by as she and two other young girls were walking toward her home, and with one hand on the steering wheel and the other on his private parts, lifted himself up in the seat and exposed his genital organs and sexual parts.

She further testified that they proceeded to her home, some two blocks away, where she reported to her mother what she had seen, and they went outside to see if he came back; that he did drive by again and they took the license number and her mother called the police.

Appellant was identified at the trial by the three girls, the other two corroborating the testimony of the girl named in the indictment. They each testified that they had seen the car previously when the driver "drove close to the curb real slow" a block away. This was before they were joined by the third girl.

Each of the girls was 15 years of age. They were dressed in blue jeans and plaid shirts and were going to play ball.

Appellant, who was arrested as a result of a bulletin upon the basis of the car license number, testified that he drove past the three girls and noticed that one of them had a baseball bat and "they were kinda talking to each other and kinda dancing around a little bit" and he drove around the block "just to see the show they were putting on." He denied that he exposed himself to the girls.

On cross-examination appellant was examined and testified in part as follows:

"Q. You saw these girls and liked the show good enough that you circled the block to get a better look? A. No.

"Q. Isn't it a fact that they weren't doing anything and the only reason that you circled the block was because there were three girls there? A. No, sir.

"Q. Were they doing something unusual? A. Well, they were dancing around.

"Q. Dancing around? Now, as a matter of fact, aren't you a

sexual deviate that gets your thrills exposing yourself? A. No, sir.

"Q. Isn't it a fact that you drive around frequently doing that sort of thing? No, sir.

"Miss Carp: Your Honor, I object to that. If he has a record, let counsel introduce it into evidence.

"The Court: I sustain the objection. I instruct you to disregard that, gentlemen. Just try one case at a time."

Formal Bills of Exception 4, 9 and 10 are predicated upon the record set out in the above quoted portion of the statement of facts. Bill 9 complains that the questions by the prosecuting attorney carried the implication that appellant was guilty of the conduct inquired about, and were calculated to impress the jury with the view that defendant had been guilty of the specific acts of misconduct which were not connected with the charge for which he was on trial. Bill 10 complains that the cross-examination "was illegitimate because the questions were not based or predicated upon an indictment or a previous conviction."

In both of these bills it is contended that the instructions of the court to the jury to disregard the questions did not cure the error.

Bill No. 4 complains of the remark of the trial judge, made in connection with his instructions to disregard, "Just try one case at a time," the contention being that the remark was prejudicial and in violation of Art. 707 C.C.P.

Bill No. 4 reveals that no objection was made to the court's remark, and there was no request made for its withdrawal or for an instruction to the jury to disregard it, and no motion for a mistrial.

The matter being first called to the trial court's attention after the verdict, with no opportunity afforded the trial judge to cure the claimed error or to declare a mistrial, the remark does not constitute reversible error.

There is no arbitrary rule that the accused may not be asked on cross-examination as to prior misconduct.

The fact that such conduct would tend to show other of-

fenses would not alone condemn the testimony. If the guilty intent of the accused on the occasion is doubtful or disputed, proof of the commission of other crimes by the accused, which proof tends to establish intent, is admissible. Watson v. State, 146 Texas Cr. Rep., 425, 175 S.W. 2d 423; Adams v. State, 95 Texas Cr. Rep. 226, 252 S.W. 979; Thomas v. State, 103 Texas Cr. Rep. 671, 282 S.W. 237; Brown v. State, 150 Texas Cr. Rep. 2, 198 S.W. 2d 580.

It is not necessary that the misconduct inquired about should have resulted in prosecution and conviction, if it was offered for the purpose of showing intent.

Here the evidence was not offered on the state's main case, nor by witnesses other than the accused, and not until he had testified that his intent was only "to see the show" and that he did not expose himself on the occasion.

We need not here determine whether or not evidence of prior acts of indecent exposure were admissible, for the trial court sustained the objection and instructed the jury to disregard the questions. We do hold that the fact that the state attempted to show by the accused that he frequently drove around exposing himself and was "a sexual deviate that gets your thrills exposing yourself," in view of the witness' negative answer and the court's instruction to the jury to disregard the question, does not call for reversal.

In Pendell v. State, 158 Texas Cr. Rep. 119, 253 S.W. 2d 426, 429, proof of a prior act of exposure and indecency was admitted, but withdrawn and the jury instructed to disregard, and we held that reversible error was not shown.

No objections were addressed to the court's charge, and the complaints that certain instructions were omitted cannot be considered.

The evidence from the standpoint of the state sustains the verdict and we find no reversible error.

The judgment is affirmed.

MORRISON, Presiding Judge, concurring.

I concur in the affirmance of this conviction because I do not construe the questions asked as proof of extraneous offenses.

It is only where a question is so stated that it amounts to an assertion of fact and implies the commission of another specific offense that it constitutes reversible error. Wharton v. State, 157 Texas Cr. Rep. 326, 248 S.W. 2d 739. The questions named no dates, places or parties and were not, as I viewed them, tantamount to proof that the accused had committed any specific act at any specified time or place in the past.

## ON MOTION FOR REHEARING

DICE, Judge.

Appellant, in his motion for rehearing, insists that reversible error is shown by Bill of Exception No. 3, which bill we did not discuss in our original opinion. The bill certifies that appellant called his wife as a witness and complains of her cross-examination by the state on matters which were not pertinent or germane to the testimony given by her on direct examination. The trial court, in approving the bill, certifies that no objection was made to this cross-examination.

It is the appellant's contention that such cross-examination constituted fundamental error in that it was in violation of Article 714, V.A.C.C.P., which provides that a husband and wife shall in no case testify against each other except in a criminal prosecution for an offense committed by one against the other. Appellant contends that he could not waive his wife's disqualification as a witness against him and was not required to object to the improper cross-examination. This contention is overruled.

An accused will not be permitted to introduce his wife as a witness in his behalf, remain silent during her cross-examination, and secure a reversal in the event any part of her cross-examination impinges upon the rule forbidding the use of the wife as a witness against her husband. Ward v. State, 70 Texas Cr. R. 393, 159 S.W. 272; Willingham v. State, 94 Texas Cr. R. 596, 252 S.W. 530; Johnson v. State, 95 Texas Cr. R. 483, 255 S.W. 416; Givens v. State, 98 Texas Cr. R. 651, 267 S.W. 725; Cole v. State, 119 Texas Cr. R. 1, 44 S.W. 2d 722; Glover v. State, 142 Texas Cr. R. 592, 152 S.W. 2d 747.

We have again considered the matters complained of in Bills of Exception Nos. 4, 9 and 10 and remain convinced that these bills do not reflect reversible error.

The motion for rehearing is overruled.

Opinion approved by the Court.

DAVIDSON, Judge, dissenting on motion for rehearing.

Being unable to agree with my brethren that this conviction should be affirmed, I respectfully enter this, my dissent.

The facts as I understand them from the standpoint most favorable to the state may be stated as follows:

The alleged injured party, a fifteen-year-old girl, and two girl companions of about the same age were at or near the corner of Lagow and Penelope Streets in the city of Dallas when, according to her testimony, appellant drove by in an automobile at a slow rate of speed and exposed to them his privates or genital organs.

As to how the exposure occurred, I quote from the testimony of one of the girls:

("Q. And will you describe to the jury just how he exposed himself?) A. He just raised up in the seat.

("Q. He raised up in the seat? And where were his hands, if you noticed?) A. One was on the steering wheel and the other was on his private sexual parts.

("Q. On his private genital parts?) A. Yes.

("Q. What are the facts as to whether his car was stopped or moving at that time?) A. It was moving.

("Q. It was moving? And how rapidly was it moving?) A. Slow.

("Q. It was moving slow? And what did you do when you saw him expose himself?) A. I turned my head and walked on down."

The testimony of the other two girls is not materially different from that above quoted.

The doors to the car were closed all the time. The girls placed the distance they were from the car at five or six feet.

The appellant did not speak or say anything to the girls at

any time. There is an absence of any testimony that at the time he exposed himself he was looking in the direction of the girls, one of whom, upon being asked, "Was he looking in your direction?," replied, "I didn't notice."

Appellant, married and the father of a four-year-old son, denied that he exposed his privates, as alleged.

Witnesses attested his good reputation for being law-abiding and for truth and veracity.

The statute under which this prosecution was conducted (Sec. 1 of Art. 535c, Vernon's P. C.) reads as follows:

"It shall be unlawful for any person with lascivious intent to knowingly and intentionally expose his or her private parts or genital organs to any other person, male or female, under the age of sixteen (16) years."

The word "lascivious" is given no special definition in the statute. It is used, therefore, in the sense commonly known and understood.

In Slusser v. State, 155 Texas Cr. R. 160, 232 S.W. 2d 727, a sodomy case, we had occasion to give a meaning to the term "lewd or lascivious manner" and the words "lewd" and "lascivious," as there used. We there said that "the term 'lewd or lascivious manner' means in a vulgar manner inciting sexual desire or appetite and connotes lust, indecency, and sexual indulgence." We further there held that the words "lewd" and "lascivious" are synonymous and signify "that form of immorality which has relation to sexual impurity."

I see no good reason why the definition of those terms, as there given, should not be here applied.

So, then, for this conviction to stand, the burden was upon the state to show (a) that appellant knowingly exposed his privates, (b) that he intentionally exposed them to the female named in the information, and (c) that he did so expose his privates with the intent to produce and satisfy or generate lust and lewd emotions within himself. Jones v. State, 156 Texas Cr. R. 2, 238 S.W. 2d 529.

Knowledge of exposure, as used in the statute, contemplates its being purposeful as distinguished from accidental or unintentional.

Under the state's testimony there is no serious difficulty in arriving at the concluson that the jury was authorized to find that the appellant knowingly exposed his privates.

A determination as to the sufficiency of the evidence to establish the other requirements is more difficult.

It will be remembered that, according to the state's witnesses, at no time did the appellant speak to, talk with, or in any manner attempt to attract the attention of the girls, or that of the particular girl named in the information, to what he was doing and to the exposure of his privates. Indeed, there is an absence of any testimony showing or suggesting that, in connection with the exposure of his privates, appellant looked at or in the direction of the girls, especially the one named in the information. If appellant intentionally exposed his privates to the individual named therein, it must be shown from and by the circumstances because, according to the testimony of the three girls, appellant uttered no word nor did he do any act that would authorize the conclusion that he intentionally exposed his privates to a particular person.

But knowledge and intentional exposure of the privates are not alone sufficient to authorize the conviction; there must exist the lascivious intent—that is, the intent on the part of appellant to generate or satisfy lust or lewd emotions in himself.

In Jones v. State, supra, in passing upon the child-fondling statute where it is made unlawful for one with lascivious intent to fondle the privates of a child under the age of fourteen years, we held:

"We think it clear that the legislature intended by this statute to make punishable the fondling of the sexual part of a child under 14 with a lewd and immoral intent on the part of the accused to indulge in lust or sexual impurity. The fact that the child be a four-year-old girl and therefore incapable of having any sexual instincts which could be developed is immaterial. The intent which is controlling is that of the accused."

No distinction is perceived between the fondling statute and the instant statute in so far as the lascivious intent is concerned, as both statutes apply and contain that element and are applicable to all children under fourteen and sixteen years of age, respectively. The rule anounced in the Jones case, supra, is therefore applicable and controlling here.

So, then, for appellant to be guilty the facts must not only show knowledge and intent, as above pointed out, but also that such exposure of his privates was for the purpose of generating or satisfying lust, or lewd or immoral sexual emotions within himself. He is not shown to have done any act or uttered any word that would constitute proof of such act.

To my mind, there is not the semblance of any testimony in this case showing that whatever appellant did was with lascivious intent—that is, to generate in himself lust or immoral sexual emotions. Such conclusion can be arrived at only by the rankest sort of conjecture and assumption.

It is apparent that I cannot and do not agree that the facts warrant this conviction.

It should be equally apparent that I do not agree that the lascivious intent which is an essential element of this offense means and has reference to generating in the male person lust or lewd or immoral sexual emotions, as was held in the Jones case, supra. In my opinion, the lascivious intent, as used in the statute here, has reference to generating in the female lust or immoral sexual emotions.

If such definition be given to that term, here, then the facts are insufficient to show that the exposure by appellant of his privates to the young lady was with the intent to arouse in her lust or lewd or immoral emotions, because the exposure was of so little importance to her that she just turned her head and continued walking.

It appears to me the least that can be said of the sufficiency of the evidence to support the conviction is that it is very meager. Especially is that true with reference to whether the facts show a lascivious intent. There is no direct testimony here that so shows. State's counsel trying this case was bound to have recognized the meagerness of the state's testimony and also the necessity for some evidence of lascivious intent. Equally so must he have been aware of the fact that for a conviction under these facts to be sustained it was necessary that the facts show a lascivious intent.

Under those conditions and circumstances, this record reveals that state's counsel, upon cross-examination of the appellant, propounded to him the following questions:

"Now, as a matter of fact, aren't you a sexual deviate that gets your thrills exposing yourself? . . . Isn't it a fact that you drive around frequently doing that sort of thing?"

To each of these questions appellant replied, "No, sir."

Appellant's objection to the questions was promptly and correctly sustained by the trial court and the jury was instructed to disregard them. Appellant insists that reversible error is reflected, nevertheless.

In the light of that contention, I notice that the first question propounded—that is, "Now, as a matter of fact, aren't you a sexual deviate that gets your thrills exposing yourself?—was so framed as to assume as a fact that appellant was a sexual deviate and exposed himself with lascivious intent. This assumption by state's counsel was made without any testimony to support it. There is not a line of testimony that he was a sexual deviate or that he got his thrills out of exposing himself. The first and only time such fact was brought before the jury was by the question propounded by state's counsel and the insinuations and assumptions cast thereby.

Now what about the second question—that is, "Isn't it a fact that you drive around frequently doing that sort of thing?" (Exposing himself for the thrills he got out of it.)

That was the very offense for which appellant was then upon trial. The question had all the effect of inquiring of appellant if he had not frequently been guilty of doing the very thing for which he was then upon trial and which he had, by his testimony, vigorously denied.

It is difficult for me to conceive of a state of facts, circumstances, or conditions where the mere asking of a question could be more harmful and prejudicial than did the asking of the instant questions.

Under the facts here shown, the state was in dire need of some evidence showing that appellant exposed himself on this occasion with a lascivious intent and that he was a sexual deviate. This absence of testimony was supplied by the assumption of facts and inferences to be drawn from the questions propounded and from no other source.

It is idle to say that the questions, the assumptions of fact

contained therein, and the inferences drawn therefrom were eliminated by the trial court's instruction to the jury to disregard them.

Irreparable injury and harm were done by the propounding of the questions. This could not be entirely obliterated from the minds of the jury, and brought about this conviction.

In this connection, I cannot lose sight of the fact that this appellant, thirty-three years of age, married, and the father of a four-year-old son, had never before this charge been arrested for any crime on any accusation. Friends and neighbors, including the pastor of the church with which appellant was affiliated, all attested his good reputation. The state made no effort to challenge that reputation.

That this appellant did not receive the fair and impartial trial which our system of jurisprudence contemplates, I am fully convinced. I cannot, therefore, agree to the affirmance of this conviction, and I respectfully dissent.