Reggie Clayton MADELEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 45394.

Court of Criminal Appeals of Texas.

Nov. 29, 1972.

Rehearing Denied Jan. 17, 1973.

Will Gray, Houston, for appellant.

James C. Brough, Dist. Atty., and Don Lambright, Asst. Dist. Atty., Houston, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for burglary with intent to commit theft where the punishment, enhanced under the provisions of Article 63, Vernon's Ann. P.C., was assessed at life.

James Savell, President of Black's Drug, Inc., testified he had the care, custody and control of Black's Pharmacy in Baytown on September 1st and 2nd, 1969; that he locked and secured the building on the evening of September 1st and, when he returned the following morning, he discovered the building had been broken into and $3,000 to $5,000 in narcotics, jewelry, and other merchandise had been stolen; and that he did not give the appellant or any other person permission to break and enter the building and take such property.

Mrs. Thad Cooper, who operated a paper route serving coin-operated boxes, related she drove up to Black's Pharmacy one evening, about dark, early in September to collect coins from a newspaper box located directly in front of the store. At such time, she observed a light blue car bearing license number BFY 33 parked in front of the store. The actions of the man and woman in the car aroused her suspicions and she wrote down the license number.

After she left, she drove back by and her son wrote down the license number. She called the police on September 3rd after she read about the burglary in the newspaper.

Houston Police Officer R. C. Rucker testified that on September 5, 1969, about 3:30 a. m., he entered an all-night food store to get a soda water when Joe Garcia, manager of the store, approached him and told him that a woman customer had a pistol in her purse. Garcia pointed to a woman, later identified as Maurine Drody, who was with the appellant Madeley. Officer Rucker had earlier observed these two drive up to the store in a 1967 Camaro automobile bearing license plate number BFY 33. He walked up to the counter and stood behind Maurine Drody while she was "digging around in her purse to get her money out." He could see the handle of a pistol in the purse. Rucker followed the woman and the appellant back to the 1967 Camaro and asked her for the pistol as they were getting into the car. She denied she had a pistol, but the officer removed the pistol from her purse while she held the purse straps. It was a loaded .22 caliber pistol. The woman appeared to the officer to be drunk or under the influence of "pills." At this time, the appellant had moved from the open door on the driver's side of the automobile to a position near the left front fender of the officer's police vehicle. He appeared to be extremely nervous and sought the officer's permission to leave in the car and abandon his companion, stating he had no gun on his person. His nervous mannerisms aroused the officer's suspicions. Rucker also observed a large quantity of unidentified material in the Camaro. He placed the appellant under arrest and called for another police unit. Prior to its arrival, Garcia came from the store and picked up a plastic box and vial containing some pills which he found lying on the ground near the left front fender of the officer's vehicle. When the other unit arrived, Officer Lineberry searched the appellant and found two yellow tablets in his shirt pocket. The Camaro was then searched and a loaded .38 caliber pistol,

as well as the merchandise taken in the burglary of Black's Pharmacy, was revealed. It was shown that the Camaro had been stolen from a car dealer in Katy though that fact was not known to the officers at the time.

Initially, appellant contends "Defendant's arrest, search and seizure were not based upon probable cause and the fruits thereof, admitted into evidence over timely objection, were barred under the exclusionary rule implementing the Fourth Amendment to the Constitution of the United States."

■ Appellant acknowledges that Article 487, Vernon's Ann.P.C., provides that any person unlawfully carrying arms "may be arrested without warrant by any peace officer," and that the arrest of Maurine Drody, based upon information received from Garcia and based on the officer's personal observations, was valid. He further agrees that it would appear that the initial search of his person, which revealed two yellow tablets, "was justified as a protective measure since he was accompanying the armed woman," and further probable cause was constituted by his actions in demonstrating his desire to leave, his nervousness, and Garcia's discovery of the pills near where he had been standing. We conclude that appellant's arrest was justified under Article 14.03, Vernon's Ann. C.C.P., and that the officer had the right to search incident to that arrest and the arrest of Maurine Drody for violation of Article 487, supra.

■ The appellant urges that the search of the car incident to the arrests, and which revealed the fruits of the burglary, exceeded the permissible scope of search incident to a lawful arrest as detailed by Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034,

23 L.Ed.2d 685 (June 23, 1969). He also notes the search in the instant case occurred after the *Chimel* decision and there can be no question of the applicability of that decision.[1]

*Chimel* declared that the permissible scope under the Fourth Amendment is "the arrestee's person and the area 'within his immediate control' . . . ." construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence. The record in the instant case reflects that Maurine Drody was standing near the open door on the passenger side of the vehicle in question and that she had just placed groceries in the back of the car. It appears this area was within her reach or was within the area in which she might have leaped or lunged for a weapon or to destroy evidence. It was, in our opinion, within the permissible scope of a search incident to a valid arrest.

The position of the appellant at the time of his arrest is not exactly clear. Obviously, the case was not tried with the then recent decision of *Chimel* in mind. The record does reflect that the appellant was at one time standing near the open driver's door before he moved away. Whether he returned to that position before his arrest is not made known.

The officer, under the circumstances presented, had the right to search the area behind the front seat and was entitled to testify what he observed and saw in plain sight when he was in a position where he had a right to be.

We need not determine whether there existed probable cause to search the motor vehicle independent of the right to search incident to arrest or the contention of the State that the appellant had no standing to

---

1. This court in Thornton v. State, 451 S.W. 2d 898 (Tex.Cr.App.1970), refused to give *Chimel* retroactive application. Subsequently, the United States Supreme Court reached the same conclusion in

Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), and Hill v. California, 401 U.S. 797, 91 S. Ct. 1106, 28 L.Ed.2d 484 (1970).

complain since the vehicle was a stolen automobile.[2]

■ Next, appellant complains that the court erred in admitting, over timely objection, hearsay testimony of Mrs. Cooper, relating to a license number allegedly written down by her son, At one point in her testimony, the witness related she wrote down the license number of the car she observed at the drug store, and later that she drove back by the store and had her son write down the number and they then compared the writing with the license on the car. This testimony was not hearsay.

■ Appellant also contends that Baytown Police Officer Cavanaugh was permitted to testify to hearsay. Cavanaugh related that he investigated the burglary in question shortly after the offense had been discovered and had received a list of missing items from the owner Savell, which list he attached to his offense report. Over objection, he was asked to read from the list, which he did. Any error in admission of such testimony was cured when Savell, who had made an inventory, read into evidence, without objection, an exhaustive list of items taken in the burglary, which was inclusive of all the items on the officer's list.

Lastly, in two grounds of error, appellant complains of the admission into evidence of a void conviction as part of his "prior criminal record." The indictment alleged four prior felony convictions for enhancement under Article 63, supra. The record evidence of three of these convictions was introduced, the court holding one of the alleged convictions was void. In addition to these three convictions, the State also introduced evidence of 15 other

felony convictions at the penalty stage of the trial. In the latter group was a prior 1957 conviction for forgery in Cause No. 5377 in the 23rd District Court of Brazoria County. In the absence of the jury, the appellant took the stand and testified that, at the time of the prior conviction, he was without counsel, was indigent and did not waive counsel. The court overruled his objection and permitted record evidence of the conviction into evidence before the jury Subsequently, before the charge at the punishment hearing was prepared, the State announced it "would join in the motion to dismiss" such prior conviction as "part of the defendant's criminal record." It was granted by the court. Just what action the court took in withdrawing the evidence from the jury is not reflected by this record.

Appellant relies upon Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), for the proposition that a conviction which is constitutionally infirm in light of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), cannot be used to support guilt or enhance punishment. See United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), and Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972).

■ In light of appellant's undisputed testimony as to lack of counsel, the evidence should not have been admitted into evidence, but we note that if the withdrawal of the evidence did not cure the error, the error is harmless error. This is so because the three prior convictions alleged for enhancement were sufficient, standing alone, to cause the imposition of the mandatory life sentence under Article 63, supra.[3] In

2. It would appear that Williams v. United States, 412 F.2d 729 (5th Cir. 1969) ; United States v. Graham, 391 F.2d 439 (6th Cir. 1969) ; Cotton v. United States, 371 F.2d 385 (9th Cir. 1967) ; Simpson v. United States, 346 F.2d 291 (10th Cir. 1965), have been decided contrary to the State's contention.

3. Further, an examination of the records of this court reflects that the appellant appealed his conviction in said Cause No. 5377. Such cause was docketed in this court as Cause No. 29,295, and the opinion affirming the conviction is reported in 307 S.W.2d 584 (Tex.Cr.App.1957). In the supplemental transcription of such

fact, two of them would have sufficed. The fact that, among the numerous other unalleged convictions offered, one conviction was void could not have affected the penalty which was required by law to be imposed under the circumstances of this case.

The contentions advanced in appellant's pro se brief have also been considered and found to be without merit.

The judgment is affirmed.

ODOM, J., not participating.

cause appears an affidavit of this appellant stating that he was advised by the trial court that an attorney would be appointed to represent him at trial and that he refused such representation and acted as his own attorney. This record also reflects that an attorney was appointed for the hearing on the motion for new trial, but the appellant had no attorney on appeal.