Thomas Edward LANDERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 48383.

Court of Criminal Appeals of Texas.

July 2, 1974.

Rehearing Denied Jan. 29, 1975.

**116**

Stephen L. Halsey, Dallas, for appellant.

Henry Wade, Dist. Atty., Richard W. Wilhelm, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

BILL J. CORNELIUS, Commissioner.

Conviction was for passing a forged instrument. The punishment, assessed by the court at appellant's election, was five years confinement.

The indictment charged that appellant had passed to Don Neece a forged check dated March 23, 1972, drawn on the Carpet Mart through the Lakewood Bank, payable to appellant in the sum of $92.46, numbered 1114 and purportedly signed by Dan E. Butler.

The State proved by Martin Morachnick, President of the Carpet Mart, that on the 18th or 19th of March 1972 his business was burglarized and a "book of checks" on the Lakewood Bank and a checkwriting machine were taken. He further said that the account at the Lakewood Bank had been closed and not used for a year or more but that a few days after the burglary he began receiving calls from numerous stores about checks being presented to them for payment. He testified that he was called to a Sears store on March 24, 1972, where a man he identified as appellant was being detained by a security guard. He identified State's Exhibit No. 1 (the check specified in the indictment) and another check, State's Exhibit No. 2, as being checks taken in the burglary, and stated that he had never had anyone by the name of Dan E. Butler working for him and that no one other than himself was authorized to sign checks for his company. The State also produced Frank Collins, an employee of Sears' Valley View store. He testified that on the evening of March 24, 1972, the appellant attempted to cash State's Exhibit No. 2, which was a check (not specified in the indictment) drawn on the Carpet Mart through the Lakewood Bank, dated March 24, 1972, numbered 1148, payable to appellant in the sum of $172.40 and purportedly signed by Dan E. Butler. The check was not accepted, but the police were called and appellant was arrested. The State also produced Don Neece, who testified that he worked for the Sears store in Mesquite and that on March 23, 1972, the night before appellant attempted to cash State's Exhibit No. 2 when he was arrested, the appellant actually cashed State's Exhibit No. 1 (the check specified in the indictment), and that it was later learned that the check was a forgery.

Thus, it is seen that State's Exhibit No. 2 was evidence of an extraneous offense. Appellant's objection on that ground was overruled by the trial court, and the State introduced both Exhibit 1 and Exhibit 2 into evidence. This was done at a time when appellant had offered no testimony and the State's witness had positively identified appellant as the party who cashed the check specified in the indictment. After the State rested, the appellant testified.

He denied that he cashed Exhibit Number 1. He admitted attempting to cash Exhibit Number 2, but he claimed it was given to him as wages for laying carpet for the Carpet Mart under the supervision of Dan E. Butler.

Appellant urges five grounds of error. Ground No. 1 is multifarious, but in the interest of justice has been considered. In that ground appellant complains, among other things, of the introduction *of State's Exhibit No. 3* into evidence. That exhibit was a check also drawn on the Carpet Mart through the Lakewood Bank. It was payable to appellant in the sum of $92.46 and purported to be signed by Dan E. Butler. It was numbered 1151 and was dated March 23, 1972.

When it was offered and admitted into evidence, State's Exhibit No. 3 was not identified in any way. It was merely shown to the appellant, who was then testifying, accompanied by this comment of the prosecuting attorney: *"I guess the clerk that turned in Exhibit 3 was also mistaken?"* Appellant did not identify Exhibit 3 and gave no testimony about it, except to concede that someone had placed his name and driver's license and social security numbers on it. The State offered no testimony or proof whatever as to where the check came from, in whose possession it had been, whether or not it had ever been passed or attempted to be passed by anyone, who had put the information on it, or whether it had ever been paid. It was simply admitted into evidence and exhibited to the jury without any explanation whatever as to its relevancy or as to any connection whatever with the appellant. Appellant's objection on these grounds was overruled. Previously, in response to appellant's motion made prior to the trial for the discovery and inspection of documents, the State's counsel had produced and exhibited only two checks, presumably State's Exhibits 1 and 2, stating that, "I will let you see *both* checks that we have." When Exhibit 3 was introduced in evidence, however, appellant objected only on the ground

of lack of identification and of proper predicate.

■ Even if this case was a proper one for the admission of extraneous offenses or acts on the part of the appellant, State's Exhibit No. 3 must have been identified and its relevancy demonstrated before it was admissible. McCormick & Ray on Texas Evidence, Sec. 1481, and cases there cited; Sec. 2103, Note 3, and cases there cited. It was incumbent upon the State to prove that such exhibit was a forgery and that appellant was connected with it. Verner v. State, 117 Tex.Cr.R. 112, 35 S.W.2d 428; Laudermilk v. State, 47 Tex.Cr.R. 427, 83 S.W. 1107; Cox v. State, Tex.Cr. App., 368 S.W.2d 600; Reyes v. State, 172 Tex.Cr.R. 82, 353 S.W.2d 450; Olivio v. State, Tex.Cr.App., 422 S.W.2d 182; Carmean v. State, 163 Tex.Cr.R. 218, 290 S.W. 2d 240. No proof of any kind was made with regard to State's Exhibit No. 3.

As authority for the admission of the check, the State cites Vandall v. State, Tex.Cr.App., 438 S.W.2d 578, which held that three checks which were within the numerical range *of a series of checks* which the accused had stolen, and which were signed and endorsed the same way as the check which the accused had passed, with his driver's license and social security numbers written on the back, were sufficiently connected with the accused to be admissible. The facts in that case are close to those here, but that case is distinguished from this case in that it appears that the checks there had been identified by a witness as having been passed and presented for payment at about the time the check specified in the indictment had been passed. In the case at bar no witness gave testimony of any kind concerning Exhibit No. 3. There is no indication in the record where the check came from or who had it. Except for a stamped notation on the back, which would be hearsay (Holland v. State, 108 Tex.Cr.R. 615, 2 S.W.2d 248; Freeman v. State, 141 Tex.Cr.R. 158, 147 S.W.2d 1095; Buckner v. State, 126 Tex. Cr.R. 321, 72 S.W.2d 274), there is no indi-

cation in the record if it had ever been paid or presented for payment anywhere by anyone. It was simply introduced into evidence (together with the prosecutor's reference to facts not in evidence) without proof or attempted explanation, for the jury to speculate about.

Apart from the question of relevancy, if evidence is to be admitted in a trial without any *authentication or identifying testimony* whatsoever, it would open the door to the easy fabrication or manufacture of evidence and possibly lead to serious injustices. It would have been simple for anyone to write appellant's name and place his driver's license and social security number on the back of the check, and thus incriminate him and bolster the charge against him falsely, even though the check might never have been in his possession or had never been cashed or presented for payment anywhere. Had the handwriting been compared, or had the check been identified as having been in possession of the appellant, or as one of those stolen from the Carpet Mart, or as being one either passed or attempted to be passed by someone, we would have had an entirely different situation. Then the additional facts showing that it was payable to appellant, signed by Dan E. Butler, and had appellant's name, driver's license number and social security number on the back, would, in a *proper case where intent is an issue*, sufficiently connect appellant to it that the jury could have inferred guilty intent or unlawful scheme and design because the jury could deem it inconsistent with appellant's innocence for him to have signed his name to such a. check, or to have had possession of it, or for anyone other than himself to pass a check made payable to and endorsed by him. Albrecht v. State, Tex.Cr.App., 486 S.W.2d 97. But there was *no such identification or proof of relevancy* here.

Having totally failed to identify State's Exhibit 3 or to show that it had any relevance to appellant's actions or intent, the State should not have been allowed to introduce it into evidence and exhibit the same to the jury for their speculation. In the case of Tomlinson v. State, Tex.Cr. App., 422 S.W.2d 474, very similar action was held to be prejudicial error requiring reversal, *even though the trial court there later withdrew the unidentified check from evidence and instructed the jury not to consider it*. Neither was done in the case at bar. See Lucas v. State, Tex.Cr.App., 378 S.W.2d 340. For the error noted, the case is reversed and remanded for a new trial. Appellant's other grounds of error are not reached.

Opinion approved by the Court.

MORRISON, Judge (dissenting).

The majority holds that *Vandall*, supra, is not controlling. They say:

"The facts in that case (*Vandall*) are close to those here, but that case is distinguished from this case in that it appears that the checks there had been identified by a witness as having been passed and presented for payment at about the time the check specified in the indictment had been passed."

In *Vandall*, we said:

"Dorothy Hill testified that during the week following (defendant's) departure, she was notified by the bank that some of the checks in the amount of $1200.00 or $1300.00 had been presented for payment. Three other company checks, numbered 10464, 10468 and 10469 were introduced."

The opinion in *Vandall* does not say what the majority says it does. It says simply:

"Appellant had possession of and passed one of the checks taken from the company, and it may be inferred that he took all twenty-one checks."

In the case at bar, the State proved that all of the checks on this particular account were stolen in the burglary. Every major

department store in the city called in to the injured party concerning forgeries on this account. Although it is true that no witness specifically identified this particular check as being one of those which was passed or attempted to be passed, it would appear that as much showing was made to identify the check in the case at bar as was made in the *Vandall* case. Martin Morachnick, President of the injured party corporation, identified State's Exhibit No. 3 by necessarily including it when he testified that all checks on this particular account were stolen. Appellant had possession of two of the checks shortly after the burglary, and it may be inferred that he took and had possession of all of the stolen checks, including State's Exhibit No. 3. *Vandall,* supra.

The three checks in question reflect the following common characteristics:

1. Appellant attempted to cash No. 2 at a Sears store, and No. 1 and No. 3 were cashed at Sears stores.

2. All three checks were made payable to appellant and signed by Dan E. Butler.

3. The evidence reflects that neither appellant nor Butler worked for Carpet Mart.

4. The same social security number (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) appears on both No. 1 and No. 3.

5. The same driver's license number and physical characteristics are noted on the backs of No. 1 and No. 3.

6. Exhibits No. 1 and No. 3 were both passed the same day.

7. All three exhibits were drawn on Carpet Mart through Lakewood Bank.

The majority admits that *Vandall* is close. I would hold it to be controlling. I am unable to perceive the distinction the majority is making, and, as I view it, it is a distinction without a difference.

Since State's Exhibit No. 3 was almost identical to the other exhibits which were properly admitted, I am persuaded that its admission, if erroneous, was nothing more than harmless error.

I do not agree that Tomlinson v. State, Tex.Cr.App., 422 S.W.2d 474, is authority for reversal either. That case was reversed on the laxity and possible bad faith of the prosecutor as is apparent from the opinion.

I dissent to the reversal of this conviction.

DOUGLAS, J., joins in this dissent.

OPINION ON STATE'S MOTION
FOR REHEARING

ONION, Presiding Judge.

On original submission this cause was reversed because of the admission into evidence of an extraneous offense by virtue of State's Exhibit #3, a check, without the proper predicate being laid to demonstrate its relevancy or appellant's connection therewith.

Appellant was charged with passing a forged instrument. In the State's case in chief the State showed not only the charged offense on March 23, 1972, which involved State's Exhibit #1, but over objection offered the extraneous offense of attempting to pass a forged instrument on March 24, 1972. At this time the appellant had offered no testimony and appellant had been positively identified as the party who passed State's Exhibit #1, the check specified in the indictment. The introduction of the extraneous offense involving State's Exhibit #2 was, under these circumstances, error. However, when the appellant later took the witness stand and denied passing State's Exhibit #1 as alleged in the indictment, he raised the issue of identity. The evidence relating to State's Exhibit #2 would then have been admissible and rendered the earlier error harmless. This is not the point, however, in controversy.

The question on which reversal turned was the admission of State's Exhibit #3

during the cross-examination of the appellant. Unlike the predicate laid for the introduction of State's Exhibit #2 where the State called Frank Collins, who testified that appellant had attempted to pass State's Exhibit #2, the prosecutor, after exhibiting State's Exhibit #3 to the appellant after he denied having been the person who passed State's Exhibit #1, asserted in the presence of the jury:

> "I guess the clerk that turned in State's Exhibit 3 is also mistaken?"

The exhibit was then offered and admitted over the vigorous objection that a proper predicate had not been laid, etc. As noted in the opinion on original submission, "The State offered no testimony or proof whatever as to where the check came from, in whose possession it had been, whether or not it had ever been passed or attempted to be passed by anyone, who had put the information on it, or whether it had ever been paid. It was simply admitted into evidence and exhibited to the jury without any explanation whatever as to its relevancy or as to any connection whatever with the appellant." It should also be noted that State's Exhibit #3 was not identified by the witness Morachnick as being one of the checks stolen.

It is clear from the prosecutor's unsworn remark he was clearly inferring that the appellant had passed or attempted to pass State's Exhibit #3.

█ The general rule is that an accused in a criminal case can be convicted, if at all, only by evidence that shows he is guilty of the offense charged. If the admission of an extraneous offense becomes proper, it is an exception itself to the general rule. See 23 Tex.Jur.2d, Evidence, Sec. 194, p. 294.

> "It must be remembered, however, that even though evidence of another crime may be relevant to the instant proceeding, *such evidence should not be admitted unless the commission of the other crime is clearly proved and the accused is*

*shown to have been its perpetrator."* 23 Tex.Jur.2d, Evidence, Sec. 195, p. 302 (Emphasis Supplied)

1 Branch's Ann.P.C., 2d ed., Sec. 188, p. 204, makes much the same point. "It is error *to admit* evidence of another offense when defendant is not shown to be the party guilty of the offense." (Numerous cases cited) (Emphasis Supplied)

█ Shepherd v. State, 143 Tex.Cr.R. 387, 158 S.W.2d 1010 (1942), made clear that even though proof of extraneous offenses comes within an exception to the general rule of exclusion, the evidence of such extraneous offense or offenses "shall not be received unless the accused is satisfactorily shown to be a party to the commission of such offense". See also Perez v. State, 165 Tex.Cr.R. 639, 310 S.W.2d 334 (1958).

And in Tomlinson v. State, 422 S.W.2d 474 (Tex.Cr.App.1967), this court, speaking through Judge Morrison, said that "no extraneous offense should be offered unless the State is prepared to prove that the accused committed the same."

The authorities supporting this proposition of law are numerous indeed. Only in the controversial case of Williams v. State, 481 S.W.2d 815 (Tex.Cr.App.1972) (indecent exposure case from Bexar County) does there seem to have been any serious departure.

It is clear from what has been said that the proper predicate was not laid for the admission of State's Exhibit #3.

The dissents on original submission and on rehearing contend that Vandall v. State, 438 S.W.2d 578 (Tex.Cr.App.1969), is controlling and a sufficient predicate was thus laid. The dissent also contends the majority opinion on original submission improperly distinguished *Vandall* when it said, ". . . but that case (Vandall) is distinguished from this case in that it *appears* that the checks there had been identified by a witness as having been passed and

presented for payment at about the time the check specified in the indictment had been passed." (Emphasis Supplied)

In *Vandall* this court wrote:

"Appellant contends that other checks were erroneously introduced into evidence, because it was not proved that he passed them. Dorothy Hill testified that during the week following appellant's departure, she was notified by the bank that some of the checks in the amount of $1200 or $1300 had been presented for payment. Three other company checks, numbered 10464, 10468 and 10469 were introduced. All were dated April 15, 1966; all four checks were otherwise identical, except for their typewritten amounts. Each check had the same endorsement, 'Joe Vandall, 910 Ave. "R"'. Check No. 10464 had below the endorsement the number 5599392.[1]

[1] The same as appellant's 'driver's license' number written below his endorsement on the check No. 10465 which was passed to Hicks.

"Appellant had possession of and passed one of the checks taken from the company, and it may be inferred that he took all twenty-one checks.[2] The se-

[2] In Mason v. State, 167 Tex.Cr.R. 516, 321 S.W.2d 591, this court stated that the rule is well-settled that [from] possession of an accused of a part of the stolen property theft of the whole may be inferred."

quence of the numbers on the checks, the number of appellant's 'driver's license' appearing on two of the checks, the same endorsement and address appearing on all of the checks, plus the fact that appellant did not report for work after April 15 are sufficient facts to connect appellant with the three checks. The court properly admitted the checks into evidence. Cage v. State, 167 Tex.Cr.R. 355, 320 S.W.2d 364.

The dissent contends that in *Vandall* the witness Dorothy Hill, the bookkeeper and office manager of the company where the checks were stolen, testified someone at a bank *told* her some of the checks had been

presented and his testimony did not prove Vandall presented the checks. The record in *Vandall* reflects that this hearsay testimony was admitted on direct examination without objection. The dissent contends that the second paragraph of the *Vandall* opinion quoted above sums up to the sufficiency of the evidence to connect Vandall with the extraneous checks and the testimony of Dorothy Hill did not and should not have entered in such assessment of the sufficiency. We agree. Although it is clear in the *Vandall* opinion that such testimony was not taken into consideration, the basis of distinction between *Vandall* and the instant case used in the majority opinion on original submission was a misreading of the *Vandall* opinion.

■ With this distinction removed, is there any distinction between *Vandall* and the instant case? With the exception of the factual situation used in the assessment of sufficiency of the evidence in *Vandall* that he (Vandall) was employed at the place where the checks were stolen and failed to report to work once the checks commenced to be passed, the cases are *similar*. There was no proof in either case who presented the checks, who had the checks or how they came into the possession of the State. A reexamination of *Vandall* in light of authorities heretofore cited convinces us that the predicate in either case was not sufficient, and *Vandall* and cases relying upon *Vandall* should be overruled to the extent of any conflict therewith.

The dissent would appear to argue that since the proof showed the appellant passed one of the stolen checks and attempted to pass another check, the third check was admissible without more in the way of a predicate than was offered.

It would appear that the dissent relies upon the rule in theft cases that from proof of the recent unexplained possession by the accused of part of stolen property theft of the whole may be inferred if it be shown that the whole of the property was

taken at one and the same time and would extend without more that inference to check cases to cover possession by the accused of checks which had been altered or forged and further to show his guilty knowledge of the alteration or forgery. While it is not altogether clear, it appears that the dissent would allow it to be inferred (from possession of a part of the stolen checks) that appellant passed or attempted to pass other checks stolen at the same time which were obviously forged after the theft and which somehow found their way into the hands of the prosecution by the time of the trial without more of a predicate.

The State itself apparently will not go that far. In its brief on the motion for rehearing, the State argues that since the appellant admitted possession of State's Exhibit #2, which he was attempting to pass when he was arrested, it can be inferred (since all the checks were taken at the same time) he also possessed State's Exhibit #3 (the extraneous offense in question), citing Mason v. State, 167 Tex.Cr.R. 516, 321 S.W.2d 591 (1959). The State further argues that since appellant admitted his endorsement on State's Exhibit #2 the jury would have been authorized to compare his known signature on State's Exhibit #2 with State's Exhibits #1 and #3, citing Article 38.27, Vernon's Ann.C. C.P. The State admits that this, *standing alone,* would not be sufficient to identify appellant as the passer of State's Exhibit #3, but urges the comparison coupled with "other factors" would be sufficient.

In Cain v. State, 468 S.W.2d 856 (Tex. Cr.App.1971), Judge Roberts, for the court, held that where handwriting samples are introduced without expert testimony to prove prior convictions and the jury alone must make comparison and there is no other evidence to connect the defendant with the prior convictions, identity of the defendant as the person previously convicted has not been sufficiently established, and that Article 38.27, Vernon's Ann.C.C.P., authorizing comparison evidence to prove

handwriting cannot be construed as meaning that mere introduction of a sample of a defendant's signature, coupled with the introduction of a signature on records showing a prior conviction, will suffice as independent testimony to prove identity of the defendant as the person who was previously convicted.

Remaining convinced that this cause was properly disposed of on original submission, the State's motion for rehearing is denied.

DOUGLAS, Judge (dissenting on State's motion for rehearing).

The majority overrules the State's motion for rehearing. In the original opinion it attempts to distinguish this case from Vandall v. State, 438 S.W.2d 578 (Tex.Cr. App.1969), as follows: ". . . but that case is distinguished from this case in that it appears that the checks there had been identified by a witness as having been passed and presented for payment at about the time the check specified in the indictment had been passed." The opinion overruling the motion for rehearing recognizes that this statement is incorrect.

It was Vandall's contention that the checks were not admissible because there was no proof that he passed the other checks. He was correct that there was no proof that he passed the other checks, but the Court held that there was sufficient evidence to connect Vandall with the three other checks. This Court wrote:

"Appellant had possession of and passed one of the checks taken from the company, and it may be inferred that he took all twenty-one checks.[2] The sequence of the numbers on the checks, the number of appellant's 'driver's license' appearing on two of the checks, the same endorsement and address appearing on all of the checks, plus the fact that appellant did not report for work after April 15 are sufficient facts to connect appellant with the three checks. The

court properly admitted the checks into evidence. Cage v. State, 167 Tex.Cr.R. 355, 320 S.W.2d 364.

> "Footnote 2: In Mason v. State, 167 Tex.Cr.R. 516, 321 S.W.2d 591, this court stated that the rule is well-settled that [from] possession of an accused of a part of the stolen property theft of the whole may be inferred."

The fact that Dorothy Hill, the bookkeeper and office manager of the company where the checks were stolen by Vandall, testified that someone at a bank told her that some of the checks had been presented for payment did not prove that the defendant in that case presented them. There was no indication in Vandall where the three checks came from or who had them.

In the present case Martin Morachnick testified that he was president of the company from which the checkbooks were stolen during a burglary March 19, 1972, and that he got calls from thirty to forty stores including four from Sears stores concerning the forgeries.

The majority opinion in the present case holds that the one unexplained check was not relevant. The three checks in Vandall were unexplained, except for the fact that they were stolen at the same time and had Vandall's name, address and his driver's license number on them. Each had the same date and was otherwise identical except for the amounts.

In the present case the check alleged in the indictment was proved to have been passed by appellant. Another check taken from the stolen book of checks was attempted to be passed and appellant was apprehended and detained by a security guard at a Sears store. The check alleged in the indictment is State's Exhibit No. 1. It, with the endorsement, is as follows:

Appellant admitted that on March 24, 1972, he attempted to pass State's Exhibit No. 2 which, with its endorsement, is as follows:

**Lakewood Bank**
AND TRUST COMPANY
Dallas, Texas 75214

1148

CARPET MART
6852 GREENVILLE AVENUE
EM 8-1351
DALLAS, TEXAS 75231

March 24 19 72   32-72/1110

PAY TO THE ORDER OF   Tommy Landers                    $ 172.40

THE SUM T 72 DOLS 40 CTS                              DOLLARS

BY ENDORSEMENT THIS CHECK WHEN PAID IS ACCEPTED IN FULL PAYMENT OF THE FOLLOWING ACCOUNT

Contract Labor

CARPET MART

Dan E Butler

State's Exhibit No. 3, about which complaint is made, is as follows:

**Lakewood Bank**
AND TRUST COMPANY
Dallas, Texas 75211

1151

CARPET MART
6852 GREENVILLE AVENUE
EM 8-1351
DALLAS, TEXAS 75231

Mar 23 19 72

PAY TO THE ORDER OF   Tommy Landers                    $ 92.40

S 92 DLS 40                                          DOLLARS

BY ENDORSEMENT THIS CHECK WHEN PAID IS ACCEPTED IN FULL PAYMENT OF THE FOLLOWING ACCOUNT

Contract Labor

CARPET MART

Dan E Butler

A more detailed statement of the facts will be set out.

Martin Morachnick testified that he was president of the company doing business as Carpet Mart. On March 19, 1972, his company building on Greenville Avenue was burglarized. After being called by the police, he went to the store and found several items to be missing. These included two checkbooks, one from Lakewood Bank and Trust on which the account had been closed. A check writer which imprinted irregularly was missing. It would imprint rather heavily some letters in red and others lightly in blue.

He testified that the account for which that checkbook was made had been closed when his business was incorporated some two years before. His employees were not writing checks on that account and he was the only one authorized to sign checks. He related that State's Exhibits 1 and 2 were taken during the burglary. All of the checks stolen in the checkbook were in consecutive order. The amounts imprinted on the two checks (Exhibits 1 and 2) were irregular and he was of the opinion that they were placed there by his stolen check protector. He stated that no one by the name of Dan E. Butler (the purported signer of the checks) had ever worked for him.

He testified that he was called on March 24, 1972 (some five days after the burgla-ry) and went to a Sears and Roebuck Store at Preston Road and LBJ, which is called Sears Valley View, where he saw appellant, who was being detained, putting his belongings back into his pockets.

F. L. Collins testified that at the time in question he was a cashier at the Sears store near Valley View. At approximately 6:30 o'clock in the evening of March 24, appellant presented him a check, State's Exhibit No. 2, and asked him to cash it. When asked for identification, appellant presented a social security card and his driver's license. Appellant endorsed the check and Collins then told him that he would try to get the check "okayed" for him. Collins found the telephone number of the Carpet Mart and called it. After talking to Morachnick, the security officer of the store was summoned. Collins gave the security officer the check and the driver's license of appellant.

Don Neece testified that on March 23, 1972, he was working for Sears in Mesquite when appellant passed the check dated March 23, 1972, State's Exhibit No. 1 (the check alleged in the indictment). Appellant endorsed the check and presented his driver's license. Neece wrote the number of the license and the social security number on the back of the check.

The appellant testified that on March 24, 1972, he went to the Sears store near Preston Road and LBJ to pass his payroll

check which he identified as State's Exhibit No. 2 and that he was given the check late that evening of March 24. He was arrested. He was asked if his wife was arrested and he answered, "Yes, my common-law wife was arrested with me." He testified that he was not in the Sears store in Mesquite where Don Neece testified about March 23 and that he did not fill out or sign the check, State's Exhibit No. 1.

On cross-examination when asked what kind of work he had done in March he stated that he had done odd jobs under a phony name so that his social security check would not be stopped. He was asked about the address where he worked before getting what he called his payroll check. The following occurred:

"Q. (Mr. Eubanks, prosecutor) Okay. At any rate we don't know what address this was where all of this carpet work was done, is that right?

"A. Well, I didn't have a car or any way of getting around when I made bond. I was only out two days until they had me back in jail on another charge."

The prosecutor asked what the other charge was. Appellant's counsel objected that this was an extraneous offense. Appellant stated, "I don't mind telling it." He then testified that the charge was assault to murder. He explained that a woman brought a stolen pickup to his house and tried to get him to "pass it" for her but he would not do it. Subsequently, she took ten dollars out of his wife's purse and laughed about it. He then "flew off the handle" and hit her with a sawed-off shotgun, for which he had pled guilty to a misdemeanor and was given 60 days in jail.

He testified that he signed the check dated March 24 but that he had never seen State's Exhibit No. 1. He was asked about the signatures on both checks: "Q. They look an awful lot alike", and he answered, "Yes, sir, they do."

He admitted that his description and driver's license number were placed on the March 24 check by the clerk. He also admitted that on the March 23 check, State's Exhibit No. 1, " . . . the part that gives my license number, my description and everything except the address is on my driver's license, sir." He then tried to explain that someone might have taken his billfold out of his pocket on March 23 and had gone to the other Sears store.

The record reflects that the prosecutor had State's Exhibit 3 in his hand and questioned appellant about the address on Reiger Street, apparently taken from the license. Appellant testified that he had lived there. The following occurred:

"Q. (Prosecutor) Of course, 4939 looks like 4931, doesn't it, but this is your description here as to your birthdate and your social security number and all?

"A. Yes, sir.

"Q. So I guess someone the day before you were arrested, someone was out at two different Sears stores with your billfold—"

Appellant's counsel objected that the prosecutor Mr. Eubanks was testifying. The objection was overruled.

"Q. (Mr. Eubanks) Well, we know there was one Sears store on March 23 where evidently a man passed a check using your identification and where a man identified you as the man that passed that check; you heard that, didn't you?

"A. I did not pass that check. I don't care who says I did.

"Q. I guess the man is mistaken.

"A. He must be.

"Q. I guess this other clerk, the one that turned in State's Exhibit 3—

"MR. HALSEY: I have to object to any other clerk or extraneous—"

The objection was overruled.

"Q. (Mr. Eubanks) I guess the clerk that turned in State's Exhibit 3 is also mistaken?

" * * *

"MR. EUBANKS: Your Honor, we'll offer State's Exhibit No. 3, the check containing the defendant's social security number and description taken off of the billfold into evidence at this time, or for whatever weight the jury wishes to give it."

Appellant's counsel objected that the proper predicate had not been laid and "that no identification has been made that that was the check passed to anyone at any Sears store; . . ."

The evidence in this, like in the Vandall, case does not specifically show that appellant by direct evidence attempted to pass the third check. The evidence is much stronger in the present case to connect appellant with the last check than the evidence was in the Vandall case.

Apparently the majority is of the opinion that one must attempt to pass as true a forged instrument before an extraneous offense or transaction is shown.

Article 998, Vernon's Ann.P.C. (1925), provides:

"If any person shall knowingly have in his possession any instrument of writing, the making of which is by law an offense, with intent to use or pass the same as true, he shall be confined in the penitentiary not less than two nor more than five years."

Possession of a forged instrument with intent to use or pass with intent to defraud is an offense. It was sufficiently established that appellant by his own testimony and eyewitness testimony possessed one of the checks in the series which was stolen, that he possessed the others under the authority of Vandall, supra, and Mason v. State, 167 Tex.Cr.R. 516, 321 S.W.2d 591. See also Anderson v. State, Tex.Cr.App., 454 S.W.2d 740; Yonko v. State, Tex.Cr. App., 444 S.W.2d 933, and 5 Branch's Ann.P.C.2d 98, Section 2650. Since the proof shows that he passed and defrauded with one of the other checks and attempted to pass another one of the checks with intent to defraud, it shows his intent to defraud with the third check.

Before the third check was admitted appellant had testified that he did not pass the check that was alleged in the indictment and that someone must have taken his billfold without his knowledge or consent and used his identification to cash the check. The appellant's connection with the check was established by all of the circumstances in the case and was admissible.

Was the third check relevant? See Albrecht v. State, Tex.Cr.App., 486 S.W.2d 97. Albrecht was convicted for passing as true a forged instrument. The office manager of a store testified that Albrecht passed a check to her. It was later shown to be a forgery. A fingerprint examiner testified that he had examined three other checks (which were identical to the check alleged in the indictment, all of which were shown to be forgeries). His examination revealed a latent fingerprint on each check which matched those of Albrecht. The checks were admitted over objection. There was nothing mentioned that Albrecht passed or attempted to pass the other three checks. This Court held the three other forged checks were relevant to prove intent. The Vandall case was cited in Albrecht in Footnote 5 as an example for the admissibility of other offenses "to show the accused's motive, particularly where the commission of the offense at bar . . . is a part of a continuing plan or scheme of which the crime on trial is also a part."

The check in the present case was admissible under Albrecht and other cases for the purpose of rebutting the defensive theory that someone must have taken his billfold and used his driver's license to cash the check alleged in the indictment.

It should be noted that the fingerprints in the Albrecht case connected him with the other three checks. There was no proof that he passed or attempted to pass the other three checks. The fingerprints of Albrecht on the three checks merely showed that Albrecht had possessed them. Like the Albrecht case, State's Exhibit No. 3 was processed through a bank, the First National Bank in Dallas.

In the present case appellant admitted possessing one of the stolen checks. The proof showed that he passed another. The presumption from possession of part of stolen goods taken at one time is that he stole all of the items. This shows appellant had possession of State's Exhibit No. 3 which was for the same amount as State's Exhibit No. 1 and being identical —except for the serial numbers (1148 and 1151). That with the endorsements on the checks and other circumstances shown make the present case much stronger than either the Vandall or the Albrecht case.

The check was relevant.

The majority now states that the State must prove an extraneous offense and that the accused was the perpetrator. In doing so, it overlooks the well reasoned and well written opinion in the latest case on the subject, Crawley v. State, 513 S.W.2d 62 (Tex.Cr.App.1974), where it is written:

"The appellant also asserts in Ground No. 1 that the extraneous acts were not admissible because they did not constitute criminal offenses under the penal laws of our State. There is no merit to this contention. That the acts relied upon to prove intent, or scheme or design, did not themselves constitute criminal offenses or result in prosecution, does not render them inadmissible. Williams v. State, 161 Tex.Cr.R. 500, 279 S.W.2d 348; Bedford v. State, 75 Tex.Cr.R. 309, 170 S.W. 727; McArthur v. State, 132 Tex.Cr.R. 447, 105 S.W.2d 227. In fact, acts not amounting to crimes would appear to be less prejudi-cial to the accused than those constituting criminal offenses. Ground of error No. 1 is overruled."

In any event, it is submitted that there is sufficient proof to show that appellant committed the burglary to get the checks; that he passed the check alleged in the indictment in addition to the proof and his admission that he passed State's Exhibit No. 2, another of the stolen checks. From all of this it shows he possessed the third check with intent to pass and defraud. This extraneous offense was proved.

How could the fact that the State did not prove that he attempted to pass the third check harm him? The proof made him guilty on an offense with the third check which made him guilty of a felony which carried the same penalty as passing as true a forged instrument. See Articles 996 and 998, V.A.P.C., supra (1925). The Legislature apparently thought one crime was just as serious as the other.

In Albrecht v. State, 486 S.W.2d 97 (Tex.Cr.App.1972), the holding is applicable. It is as follows:

"While the presence of appellant's fingerprints, standing alone, would be insufficient to show that he had passed them, such evidence is sufficient to show that he possessed them. The fact that he possessed them demonstrates that he had knowledge of their existence. Therefore, the presence of appellant's fingerprints on forged checks which were substantially identical to the one he was charged with passing demonstrates that he passed the instrument in question knowing it to be a forgery. See Vandall v. State, Tex.Cr.App., 438 S.W.2d 578. We hold that the evidence was sufficiently linked to appellant to be admissible on the issue of knowledge."

What does the majority do with Albrecht? Is it overruled or is it left dangling without being explained or overruled to the bewilderment of trial judges, lawyers and researchers?

Now the majority is apparently holding that the jury may not look to the handwriting on the checks for comparison purposes. Article 38.27, V.A.C.C.P., provides:

"It is competent to give evidence of handwriting by comparison, made by experts or by the jury. Proof by comparison only shall not be sufficient to establish the handwriting of a witness who denies his signature under oath."

There was no denial under oath that either of the signatures was his. In fact the appellant testified to the similarity of the signatures. The Legislature, by the above statute, authorized the jury to look at the signatures. Apparently the majority "repeals" Article 38.27, supra.

Cain v. State, 468 S.W.2d 856 (Tex.Cr. App.1971), cited by the majority, is not in point. That case holds that the introduction of a signature on records showing prior convictions will not suffice to show an accused as the person previously convicted.

The majority does not discuss the other facts about the appellant's address, his date of birth, his social security number, the use of the same check protector on the checks. Nor does it consider that appellant admitted possessing one of the stolen checks when they were all taken in the burglary.

Along with the "repeal" of Article 38.27, supra, the majority now overrules the Vandall case which has been the rule for six years.

Trial judges and citizens are entitled to some predictability in the law. Jurisprudence is not served by a different decision on substantially the same fact situation each time it is before the same appellate court. In the present case Vandall is overruled; Albrecht is not mentioned and it is weaker than the present case. At least judges and lawyers after this decision will have a case on each side of the question.

This case may leave the readers to conclude as Justice Roberts of the Supreme Court of the United States did years ago when he wrote that the Court's decision:

". . . tends to bring adjudications of this tribunal into the same class as a restricted railroad ticket, good for this day and train only. . . ."

Smith v. Allwright, 321 U.S. 649, 669, 64 S.Ct. 757, 768, 88 L.Ed. 987, 1000 (1944).

If there ever was harmless error from all the facts, it is in this case. The State proved and appellant admitted the second check, an extraneous offense. The State proved he possessed the third check. The proof showed many checks were stolen in the burglary. Appellant volunteered that he defrauded the government to get social security checks and that he was convicted for assaulting a woman with a "sawed-off" shotgun.

Harmless error is just as applicable to this case as it was in Madeley v. State, 488 S.W.2d 416 (Tex.Cr.App.1973). The language of the concurring opinion in McComb v. State, 488 S.W.2d 105, 110 (Tex. Cr.App.1973), is applicable and is:

". . . If he was improperly impeached by a void conviction, it could not have influenced the outcome of the guilt stage of the trial in light of the evidence described in the majority opinion and the other six valid prior convictions with which he was also impeached. . . ."

and

". . . Next, any error in introduction of a wholly unconstitutional prior conviction at the penalty stage would have been harmless error in view of the circumstances of the offense and other parts of the appellant's 'prior criminal record' validly received into evidence and the penalty itself. See Harrington

v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284."

No reversible error has been shown. The motion for rehearing should be granted and the judgment affirmed.

MORRISON, J., joins in this dissent.